## AUTOMOBILE INS. CO., OF HARTFORD, CONN., et al. v. CENTRAL NAT. BANK, SAVINGS & TRUST CO. et al.

### THE LAKELAND CASES.

Circuit Court of Appeals, Sixth Circuit.
July 5, 1927.

Nos. 4709–4723.

1. **Insurance** ⬳646(6)—**Burden of proof as to marine loss held not changed by defendants' giving evidence of scuttling under general denial.**

Where defendants in action on marine policy merely denied the allegations of complaint that loss resulted from a peril insured against, burden of proving by preponderance of evidence that loss was due to one or the other insured risks was not shifted from plaintiffs by defendants' introducing evidence of scuttling; it being offered, not in support of any affirmative defense, but to sustain denial of liability, and it bearing only on the question of plaintiffs having affirmatively made out their case.

2. **Insurance** ⬳665(4)—**Burden of showing loss by one of insured marine risks does not require jury to be satisfied as to which was actual cause.**

Burden on plaintiffs, in action on marine insurance policy, of establishing by preponderance of evidence that loss was caused by one of the insured risks, does not mean that jury must reach a definite conclusion as to which of alleged causes was operative; but it is enough if jury finds that the evidence preponderates in favor of any one of these causes as against some other possible or probable cause, even though jury is unable to say which of the several causes alleged by plaintiff was the actual cause of the sinking.

3. **Appeal and error** ⬳1064(1)—**Trial** ⬳295 **(8)—Instructions in action on marine policy as to burden of proof, considered as a whole, held erroneous and prejudicial to defendants.**

Instructions in action on marine policy as to burden of proof, considered as a whole, though several times stating it was on plaintiffs, *held* erroneous and materially prejudicial to defendants; the judge in each of such instances having been speaking either generally or specifically on the theory that loss was due to opening of seams of the old vessel, and references to the question of scuttling in a number of instances having been so made as to justify jury in believing that scuttling, evidence of which was given under a general denial, was an affirmative defense, to be established by defendants by a preponderance of proof to excuse them from liability.

4. **Trial** ⬳252(14)—**Reference in charge in marine insurance case to presumption that loss is covered by policies held out of place, in view of evidence and restricted risks.**

Reference in charge in an action on marine policy to presumption as rule of law that loss is covered by the insurance policies, in the absence of a plausible or reasonable explanation as to the cause of sinking, *held* out of place, in view of evidence as to possible or probable causes, and of the restricted nature of the risks covered by the policies.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Consolidated actions by the Central National Bank, Savings & Trust Company, as trustee, and others, against the Automobile Insurance Company of Hartford, Conn., and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

T. Catesby Jones, of Bigham, Englar & Jones, of New York City, and William L. Day, of Day & Day, of Cleveland, Ohio, for plaintiffs in error.

S. H. Holding, of Holding, Duncan & Leckie, of Cleveland, Ohio (Calfee, Fogg & White, of Cleveland, Ohio, on the brief), for defendants in error.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. [1] Actions on hull insurance policies on the steamship Lakeland, which sank in Lake Michigan on December 3, 1924. The policies insured the following risks:

"Touching the adventures and perils which the said assurers are content to bear and do take upon themselves by this policy, they are of the inland seas and water, enemies, pirates, drovers, thieves, fires, explosions, collisions, jettisons, barratry of the master or mariners, and all other perils, losses and misfortunes that have come or shall come to the hurt, detriment or damage of said vessel or any part thereof.

"This insurance also specially to cover (subject to the above free of average warranty) loss of, or damage to the hull or machinery, through the negligence of master, mariners, engineers or pilots, or through explosions, bursting of boilers, breaking of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not

resulted from want of due diligence by the owners of the vessel or any of them or by the manager."

The amended complaint alleged that the steamship sank by reason of the perils of the sea; in that on a voyage from Chicago to Detroit bad weather and sea was encountered; the vessel put into Sturgeon Bay for shelter, and while rounding into the turning basin struck an obstruction and fetched up hard; the steamer, after being released, proceeded out of Sturgeon Bay into Lake Michigan, encountered heavy seas, filled with water, and sank. The amended complaint further alleged that:

"Subsequent to the filing of the original petition herein, defendant and the other underwriters on said steamer fitted out a diving expedition and caused the wreck of said steamer lying at the bottom of Lake Michigan as aforesaid, to be examined by divers and representatives of defendant and the other underwriters have informed plaintiffs that certain valves were found open, and that the steamer filled with water and sank as above described, by reason of said valves being open. Plaintiffs have no knowledge as to said valves being open, but allege that if they were thus open, or any other parts or appliances of the steamer placed or managed in such a manner as to cause the steamer to sink, it was by reason of the negligence of the master, mariners or engineers of said steamer, without any lack of due diligence by the Thompson Transit Corporation or the manager of the steamer, or it was by reason of barratry of the master or mariners, both of which are among the perils and risks insured against as above set forth."

Plaintiffs thus alleged that the loss had resulted from a peril insured against. Defendants had not pleaded, and were not required under the policies in this case to plead, an affirmative defense; they merely denied plaintiffs' allegations. Nor was there any change in this respect by reason of any statements of counsel, preceding the taking of testimony or during the trial. On the contrary, the colloquy of court and counsel, before the testimony was heard, fully sustains defendants' contention that they then and there rested upon their denial of liability. The burden of proof established by the proper pleadings therefore remained unchanged; it devolved upon plaintiffs to prove, by a preponderance of the evidence, that the loss was due to one or the other risk assumed and insured against by defendants under the policies.

Plaintiffs offered substantial evidence to support their allegations, other than those of negligence or barratry in opening the seacock; defendants introduced testimony of divers, that they had examined the wreck and found an open seacock, as well as evidence of circumstances tending to support their theory of scuttling with connivance of the owners and resulting nonliability under the policies.

The ultimate burden did not shift by reason of the evidence of scuttling presented by defendants; that evidence was not offered in support of any affirmative defense because there was none. It was offered to sustain the denial of liability, to raise at least a question in the jury's mind as to whether or not the sinking was in fact due to a peril covered by the policies. It bore only upon the question as to whether or not plaintiffs had affirmatively made out their case of liability under the policies.

The question of whether the seacock was open or closed was the real bone of contention. If the seacock was closed, there could have been no scuttling, and the evidence would have clearly justified a finding that the loss was due to some one of the perils of the seas insured against. On the other hand, if the jury found that seacock was open, then because there was no evidence in the case that would have justified a finding either of negligence or of barratry on the part of the master and/or crew, but only of scuttling, the finding would necessarily be for the defendants.

[2] With the burden resting on plaintiffs, it was essential for them either affirmatively or inferentially to establish by the preponderance of the evidence that the loss was caused by one of the insured risks. This does not, however, mean, as defendants contend, that the jury must reach a definite conclusion as to which one of the several alleged causes was operative. It suffices for recovery if the jury finds that the evidence preponderates in favor of any one of these causes as against some other possible or probable cause, even though they are unable to say which of the several causes alleged by plaintiffs was the actual cause of the sinking. It follows from this that, while the issue of scuttling was the important issue in the case, it was not necessarily the only question to be considered; for, while the burden of proof was on plaintiffs to establish that the seacock was closed, and not on defendants that it was open, nevertheless, if the jury could not determine whether it was closed or open, but was in a state of doubt thereon, it was yet possible to find for the plaintiffs, because the defendants' proofs thereon might be so discredited or minimized

that they would be overbalanced by the rightful inferences from all the circumstances. Such a finding, however, would in these circumstances be justified only if the jury found that the preponderance of the evidence was in favor of some one of the other causes rather than that there was an open seacock.

[3] We think the instructions to the jury in respect to the burden of proof, considered as a whole, were erroneous and materially prejudicial to defendants. In the charge, the court, it is true, several times stated that the burden was on plaintiffs; but in each such instance the judge was speaking either generally or specifically on the theory that the loss was due to the opening of the seams of the old, brittle vessel. On the other hand, the references to the question of scuttling in a number of instances were so made that the jury was fully justified in believing that scuttling was an affirmative defense to be established by a preponderance of proof by the defendants in order to excuse themselves from liability.

[4] Further, the reference in the charge to a presumption as a rule of law that a loss is covered by the insurance policies in the absence of a plausible or reasonable explanation tion as to the cause of sinking, was out of place, in view both of the evidence as to possible or probable causes and of the restricted nature of the risks covered by the policies.

As the issues were not defined with the clarity that, under the pleadings and the evidence, was essential to a proper determination thereof, the cases must be retried.

Reversed and remanded.