**Morris FEINBERG, Treasurer**
and
**Beacon Brass Company**
v.
**INSURANCE COMPANY OF NORTH
AMERICA.**

Civ. A. No. 57–818.

United States District Court
D. Massachusetts.

May 12, 1958.

George J. Dodd, Morris Michelson, Boston, Mass., for plaintiffs.

William T. Conlan, Ely, Bartlett & Brown, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is an action by an insured under a policy of marine insurance following the scuttling of the yacht Mariposa. The vessel was a Chris-Craft twin-screw cabin cruiser, 42′ long, with a beam of 13′ and a draft of 3. She was luxuriously, if not ostentatiously, built, with appointments of an obviously expensive na-

ture. The plaintiff docked her at a marina in the Neponset River in Dorchester. Various other boats were kept lower down the river. When the Mariposa proceeded she carried either a bow wave or a wake of sizeable proportions, causing serious annoyance to other boats and persons. The plaintiff testified that this could not be avoided, but I found his explanation difficult to accept, and am sure that many persons more directly affected felt otherwise. This conduct had continued for some time, and had resulted in one very hostile telephone complaint. I can imagine similar feelings were shared by other smaller boat-owners who were recipients of his back-wash.

On the evening of June 6, 1957 the Mariposa was left as usual at the main dock of the marina. She was in the range of a flood-light, and was left in that particular place to discourage boarders, there being no night watchman. Sometime between 10:30 P. M. and the next morning strangers boarded her and moved her 90 feet to another float beyond the reach of the light, and tied her up.[1] They also entered the cabin. The cabin door could be unlocked by a common skeleton key, and as there were no marks anywhere of forcing, I conclude that this was what they did. They proceeded to remove all loose valuables, such as a sizeable TV, a record-player, fishing tackle, shotguns, and several cases of liquor. From scuff marks on the river side of the hull I conclude that these were taken away by water. Before leaving, the strangers unscrewed a small drain plug under the cabin floor. At 7:30 the next morning the vessel was found partially submerged, the water flowing in through the drain having already reached the top of the motors. Rescue operations were immediately commenced, the water pumped out, and the drain hole stopped up. Substantial water damage had been caused.

The question is whether the insurer is liable under a policy which covers "perils

\* \* \* of the seas, fire, lightning, assailing thieves, theft of the entire yacht, jettisons, barratry of the Master and Mariners, and of all other like perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of said Yacht, or any part thereof." Nothing is said of vandalism, unless included in the above.

Plaintiff suggests the boat was moved as preliminary to an attempt to start the motors and make off with her. If anyone was so bold as to intend risking attention by starting one or two 200 h. p. motors, he would not worry, it seems to me, about light. There is nothing affirmative to indicate such an intent. It being entirely speculative, and the burden being on the plaintiff, I disregard this possibility. Rich v. United Mutual Fire Ins. Co., 328 Mass. 133, 102 N.E.2d 431. Neither would there be any point in moving her in order to scuttle her. I find that the vessel was taken from one float to the other solely to facilitate the removal of bulky personal property. Were it not for certain matters earlier referred to, established by the defendant, I would find that the scuttling was a mere afterthought. As it is, I believe I am warranted in finding that contemplation of scuttling was part of the original plan. The question, therefore, is whether moving the vessel to another dock in order to steal personal property aboard, with the intention of thereafter scuttling her, the subsequent entry and larceny, and the ultimate scuttling, in any measure come within the policy.

Taking the provisions chronologically, although the hull and machinery were damaged by the inrush of water, I hold that this was not a peril of the sea, having resulting from an intentional act unconnected with perils of nature or navigation. P. Samuel & Co. v. Dumas, [1924] A.C. 431 (H.L.); Automobile Ins. Co. v. Central, etc., Trust Co., 6 Cir., 20 F.2d 619. While there

---

1. The fact that they went to some pains to make her fast, although they stole her nylon docklines, is indicative of their lack of intention to deprive the plaintiff of the vessel.

was a suggestion in Lord Summer's dissenting opinion in Dumas that an intentional collision caused by a vessel determined on maintaining her right of way was a peril of the sea, I could not feel that intentional scuttling falls into such category, no matter by whom caused.

There is, of course, no claim that the loss was due to fire or lightning.

■■ The plaintiff does not contend that the loss was occasioned by "assailing thieves." This term is of long standing, but has been infrequently defined. I believe an assailing thief to be someone in the nature of an assailant, and that if the vessel were forcibly stormed, as by marauders, for the purpose of thievery, consequent damage would be recoverable even though the theft were averted, but not when the entry is by stealth upon an unoccupied vessel. See Arnould, Marine Insurance (14th ed.) § 837. The word "assailing" must have some positive meaning, such as "robbery by force." See Paddock & Field v. Commercial Ins. Co., 2 Allen, Mass., 93, 101. I come, therefore, to "theft of the entire Yacht." In this connection it is necessary to examine another provision of the policy. The General Coverage clause is entitled "Hull and Machinery," which is more specifically defined as "Hull, Spars, Sails, Tackle, Apparel, Machinery, Boats, Furniture and such other equipment as is normally required for the operation and maintenance of the Yacht hereby insured." Reading this together with the Perils clause makes it apparent that damage to only part of the vessel or equipment caused by certain of the enumerated perils may be covered. However, theft is expressly limited to the entire vessel. Accordingly, I hold that the policy unambiguously provides that theft of personal property is not covered unless the entire vessel has been stolen. The question thus remains, was the entire vessel stolen?

■■ The leading Massachusetts definition of theft appears in Bloom v. Ohio Farmers Ins. Co., 255 Mass. 528, at page 530, 152 N.E. 345, "a taking with the intent to deprive the owner permanently of his property for the pecuniary benefit of the taker." In that case an unauthorized person took an automobile, drove it away, removed the spare tire, and then sought to dispose of the car in 60 feet of water in an abandoned quarry. Actually it failed to enter the water, and was recovered. The court held the evidence warranted a finding of theft of the car on the theory that the jury could find that the thief "discarded the car where he thought it would disappear forever lest it prove a valueless and dangerous possession." 255 Mass. at page 530, 152 N.E. at page 345. The court's language about pecuniary benefit makes it clear that mere vandalism, destruction for destruction's sake, is not theft. See Rich v. United Mutual Fire Ins. Co., supra. In view of the limited pecuniary benefit in the Bloom case, so far as the entire car was concerned, it seems to me that that case went to the limit of the principles announced, and could not justify a finding in the case at bar. The scuttling of a boat tied to a dock in six feet of water, where recovery was inevitable, and damage, although doubtless substantial, would be far from complete, would not permanently deprive the owner of the vessel. By the same token it could not be regarded as a discard which would be thought to disappear forever. The scuttling was neither in aid of the theft, nor for the purpose of concealing it, and entailed no contemplated benefit other than personal gratification.

As to the moving of the yacht from one dock to another for the above purposes, while this was a sufficient exercise of dominion to amount to a taking, it does not advance the plaintiff's case so far as intent is concerned.

■ It is not claimed that there was jettison, or barratry. The phrase "all other like perils, losses and misfortunes," is essentially a flourish, adding nothing of substance. Union Marine Ins. Co. v. Charles D. Stone & Co., 7 Cir., 15 F.2d 937. It follows that the complaint must be dismissed.