December 19, 1994 United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit

No. 94-1526

COMMERCIAL UNION INSURANCE COMPANY,
Plaintiff, Appellant,

v.

WALBROOK INSURANCE CO., LTD., ET AL.
Defendants, Appellees.

No. 94-1561

COMMERCIAL UNION INSURANCE COMPANY,
Plaintiff, Appellee,

v.

NATIONAL CASUALTY CO. ET AL.,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

ERRATA SHEET ERRATA SHEET

On page 10, line 14, delete "Interest" and insert "Intent". 

United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit

No. 94-1526

COMMERCIAL UNION INSURANCE COMPANY,
Plaintiff, Appellant,

v.

WALBROOK INSURANCE CO., LTD., ET AL.
Defendants, Appellees.

No. 94-1561

COMMERCIAL UNION INSURANCE COMPANY,
Plaintiff, Appellee,

v.

NATIONAL CASUALTY CO. ET AL.,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Selya, Circuit Judge,
Campbell, Senior Circuit Judge,
and Stahl, Circuit Judge.

Richard L. Neumeier with whom Parker, Coulter, Daley & White was
on brief for Commercial Union Insurance Company.
James B. Dolan with whom Erin R. Boisvert, Badger, Dolan, Parker
& Cohen, Robert J. Brown, Mark A. DiTaranto, and Mendes & Mount were
on brief for Walbrook Insurance Co., Ltd., et al.

December 5, 1994


STAHL, Circuit Judge. For the second time, we STAHL, Circuit Judge.

examine issues arising out of a dispute between Commercial

Union Insurance Company ("CU") and Walbrook Insurance et al.

(collectively, "Weavers") concerning Weavers's obligation to

indemnify CU under an insurance contract. On initial appeal,

we reversed the district court's grant of summary judgment in

favor of Weavers and remanded the case for further

proceedings consistent with our opinion. Commercial Union

Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047 (1st Cir. 1993)

("Commercial Union I"). Both parties now challenge the

district court's entry of judgment for CU and denial of

cross-motions to amend or alter that judgment. Weavers has

also moved to dismiss CU's appeal. We deny the motion to

dismiss and affirm the entry of judgment below.

I. I.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Between 1973 and 1975, a CU loss-prevention

inspector conducted several safety inspections of the

Peterson/Puritan aerosol-packing plant in Cumberland, Rhode

Island. On January 17, 1976, a gas line exploded at the

plant, killing four people and injuring several others. Two

years later, victims filed several suits naming CU as

defendant ("Peterson claims"). CU eventually settled the

Peterson claims. CU expended $2,502,874.30 for defense and

in settlement of the claims. Ultimately, CU obtained primary

-2- 2

indemnification in the amount of $1,000,000 from American

Employers Insurance Company ("American Employers"), CU's

primary corporate insurer for the period July 1, 1976 through

July 1, 1979.1

At the time of the explosion, the Travelers

Insurance Company had issued to CU a primary corporate

liability policy ("Travelers Policy") effective from January

1, 1976, to July 1, 1976. The Travelers Policy provided

occurrence-based coverage2 during the policy period for up

to $1 million of CU liability. The main body of the

Travelers Policy specifically excluded occurrences involving

malpractice by CU's engineers. This gap was partially filled

by a separate Engineers Professional Liability Endorsement

issued by Travelers ("Travelers EPL Endorsement"). The

Travelers EPL Endorsement provided claims-based coverage.3

As the Commercial Union I panel noted, the

Travelers Policy and the Travelers EPL Endorsement left CU

with a gap in its coverage with respect to occurrences

resulting from engineer malpractice for which no claim was

filed during the policy period. Consequently, at the time of



1. American Employers is not a party to this case.

2. Occurrence-based insurance provides coverage if the act
giving rise to the claim occurred during the policy period,
regardless of when the claim is filed.

3. Claims-based insurance provides coverage for claims made
during the policy period regardless of when the acts giving
rise to the claims occurred.

-3- 3

the explosion, CU also carried an umbrella policy issued by

Weavers ("Weavers Umbrella").4 Under the first section of

the main body of the Weavers Umbrella, captioned "COVERAGE,"

the policy expressly covered "all sums . . . imposed upon

[CU] by law . . . or assumed under contract or agreement . .

. for damages on account of . . . personal injuries, property

damage, [or] advertising liability . . . arising out of each

occurrence happening anywhere in the world."5

The next section of the main body of the Weavers

Umbrella, captioned "LIMIT OF LIABILITY," provided that

Weavers would only be liable for the ultimate net loss in

excess of either "(a) the limits of the underlying insurances

as set out in the attached schedule in respect of each



4. "Umbrella" policies differ from standard excess insurance
policies in that they are designed to fill gaps in coverage
both vertically (by providing excess coverage) and
horizontally (by providing primary coverage). Commercial
Union I, 7 F.3d at 1053. In the latter instance, the
Umbrella is said to "drop down" to provide primary coverage
where the underlying policy provides no coverage at all.

5. Under the Weavers policy, the term "occurrence" was
defined as follows:

The term "Occurrence" wherever used
herein shall mean an accident or a
happening or event or a continuous or
repeated exposure to conditions which
unexpectedly and unintentionally results
in personal injury, property damage or
advertising liability during the policy
period. All such exposure to
substantially the same general conditions
existing at or emanating from one
premises location shall be deemed one
occurrence.

-4- 4

occurrence covered by said underlying insurances" or "(b)

$25,000 ultimate net loss in respect of each occurrence not

covered by said underlying insurances . . . ."

To the Weavers Umbrella was attached an EPL

Endorsement ("Weavers EPL Endorsement"). The terms of the

Weavers EPL Endorsement provided that it was to "include

Engineers Professional Liability as more fully described in

the underlying General Liability Policy/ies" (referencing the

Travelers Policy) and that such coverage "is subject to the

same warranties, terms and conditions . . . as are contained

in the said underlying policy/ies . . . ." The parties agree

that because this language specifically incorporates the

provisions of the Travelers EPL Endorsement, the Weavers EPL

Endorsement provided claims-based coverage.

Subsection (a) of the Weavers EPL Endorsement

captioned "LIMIT OF LIABILITY," provided that Weavers would

only be liable for the ultimate net loss in excess of "[t]he

limits of the underlying insurances as set out in the

attached schedule in respect of each occurrence covered by

said underlying insurances." If the liability was not

covered by another policy, subsection (b) of the Weavers EPL

Endorsement ("Liability Amendment") provided coverage for

"the excess of . . . $25,000 ultimate nett [sic] loss in

respect of each occurrence not covered by said underlying

insurances but in respect of engineering services liability

-5- 5

$250,000 ultimate nett [sic] loss [for] each occurrence not

covered by said underlying insurances." In effect,

subsection (b) provides for a deductible when the Umbrella

"drops down" to provide coverage not covered under the

underlying policy ("$250,000 deductible"). An attachment

captioned "Schedule of Underlying Insurances" lists the

Travelers Policy.

Initially, Travelers undertook the defense of the

Peterson claims. Then, in 1982, CU determined that it had

not made its claim for coverage during the Travelers Policy

period. Accordingly, CU released Travelers from any further

obligations in connection with the explosion. Weavers then

informed CU that its Umbrella would not cover the Peterson

claims. In November 1982, CU brought the present action,

seeking a judicial declaration as to whether the Weavers

Umbrella covered the Peterson claims.

Following extensive discovery, both parties sought

summary judgment. CU argued that the main body of the

Weavers Umbrella covered EPL claims on an occurrence basis

and that the Weavers EPL Endorsement provided additional

coverage on a claims basis. Weavers argued that the Weavers

EPL Endorsement was the sole source of EPL coverage and,

because the EPL Endorsement was claims-based, there was,

accordingly, no coverage under either the Weavers Umbrella or

the Weavers EPL Endorsement. The district court largely

-6- 6

adopted the latter reading and granted Weavers's motion for

summary judgment.

On appeal, the Commercial Union I panel reversed.

Interpreting the various policy provisions, the panel

concluded that the main body of the Weavers Umbrella provided

occurrence-based EPL coverage and thus covered the Peterson

claims. Commercial Union I, 7 F.3d at 1049. Consequently,

the panel ordered that the judgment in favor of Weavers be

vacated and that judgment be entered for CU, in proceedings

consistent with the panel's opinion. Weavers's petition for

rehearing and rehearing en banc was denied.

In this appeal, we are asked to review issues

arising from the subsequent proceedings before the district

court. CU moved that the district court enter judgment for

$1,502,874.30 plus interest6 to be calculated at 12%, the

prejudgment interest rate for contractual disputes under

Massachusetts law. In its response, Weavers argued that the

$1,502,874.30 was subject to the $250,000 deductible and that

prejudgment interest should be determined by reference to

federal law. As to the prejudgment-interest issue, Weavers

argued in the alternative that if state law applied, the



6. In its brief in Commercial Union I, CU explained:
"Commercial Union . . . does not seek to hold Weavers liable
for $2,227,874.30 [sic] ($2,502,874.30 [settlement and
defense costs related to the Peterson claims] less the
$250,000 retention). Commercial Union seeks to recover only
the amount it is out of pocket caused by Weavers'[s] breach:
$1,502,874.30 plus interest."

-7- 7

correct Massachusetts statute set the rate at 6%. The

district court, finding that the Commercial Union I panel had

"rested judgment upon" the validity of the $250,000

deductible, applied the deductible, ordered entry of judgment

for CU in the amount of $1,252,874.30, found state law to

govern interest, and ordered that prejudgment interest be

calculated at the rate of 12%. The district court entered

judgment for $2,749,326.48.

Pursuant to Fed. R. Civ. P. 59, both parties filed

motions seeking to alter or amend the judgment. The district

court denied both motions.7 CU appealed, and Weavers cross

appealed. CU requested that Weavers post a bond pursuant to

Fed. R. Civ. P. 62. When Weavers refused, CU obtained an

execution. CU then received payment from all defendants

except Walbrook and Slater, Walker and has accepted checks

totaling $2,314,758.61. CU refused to execute a satisfaction

of judgment. Weavers moved to dismiss CU's appeal. The

motion to dismiss was denied without prejudice pending

reconsideration by this panel.

II. II.

DISCUSSION DISCUSSION



7. The judgment was amended by joint motion to correct
technical errors.

-8- 8

Where, as here, the issues on appeal involve pure

questions of law, our review is de novo.8 See, e.g.,

Villafane-Neriz v. Federal Deposit Ins. Corp., 20 F.3d 35, 39

(1st Cir. 1994). On appeal, CU makes two principal

arguments: (1) that the district court erred in stacking the

$250,000 deductible on top of the payment received from

American Employers; and (2) that Weavers waived its right to

argue for alternate relief in application of the deductible.

In its cross appeal, Weavers argues: (1) that the district

court erred in applying state law to award prejudgment

interest; and, in the alternative, (2) that, if state law

applies, the district court applied the incorrect law. On

its motion to dismiss CU's appeal, Weavers argues that, in

executing the district court's judgment, CU waived its right

to appeal. We first address Weavers's motion to dismiss,

then CU's appeal and, finally, Weavers's cross appeal.

A. Weavers's Motion to Dismiss

In its motion to dismiss, Weavers argues that,

because CU executed judgment against all defendants except

Walbrook and Slater, Walker, CU has "accept[ed] the



8. We review the district court's decision to deny a motion
to alter or amend a judgment for manifest abuse of
discretion. See, e.g., Jorge Rivera Surillo & Co. v.
Falconer Glass Indus., No. 94-1047, slip op. at 5 (1st Cir.
Oct. 12, 1994). As our discussion below indicates, we find
that the district court properly entered judgment and
therefore did not abuse its discretion in denying the motions
under Rule 59. Accordingly, we hold that the parties' cross-
motions under Fed. R. Civ. P. 59 were properly denied.

-9- 9

substantial benefits of a judgment, voluntarily and

intentionally, and with knowledge of the facts," Fidelcor

Mortgage Corp. v. Insurance Co. of N. Am., 820 F.2d 367, 370

(11th Cir. 1987) (citations omitted), and therefore waived

its right to appeal. CU argues that Fidelcor, on which

Weavers principally relies, should be distinguished because

in that case Fidelcor executed a satisfaction of judgment,

whereas CU has refused to do so.

Our analysis must start with United States v.

Hougham, 364 U.S. 311, 312 (1960), in which the Supreme Court

held that "where a judgment is appealed on the ground that

the damages awarded are inadequate, acceptance of payment of

the amount of the unsatisfactory judgment does not, standing

alone, amount to an accord and satisfaction of the entire

claim." Commentary has noted that the dimensions of the

Court's holding are vague and courts of appeals have

subsequently developed disparate "acceptance of benefits"

doctrines. See, e.g., 9 James W. Moore et al., Moore's

Federal Practice 203.06 (2d ed. 1994) (hereinafter, Moore's

Federal Practice); Benson K. Friedman, Note, An Intent-Based

Approach to the Acceptance of Benefits Doctrine in the

Federal Courts, 92 Mich. L. Rev. 742 (1993); Annotation,

Right to Appeal From Judgment As Affected By Acceptance of

Benefit Thereunder -- Federal Cases, 5 L.Ed.2d 889 (1960).

This Circuit has not explicitly addressed this issue since

-10- 10

Hougham. Notably, in Fidelcor, the Eleventh Circuit does not

discuss Hougham. Instead, Fidelcor relies on pre-Hougham

common law that strictly applied the bar to appeal after

acceptances of benefits, subject to only limited exceptions.

We decline to follow this approach.

While the use of the phrase "standing alone" by the

Hougham Court does lead to some uncertainty, we think that

the unique circumstances presented here fit comfortably

within the rule of that case. As discussed fully below, CU's

appeal focuses on the district court's application of the

$250,000 deductible. Weavers argued for the application of

the deductible before the district court and, except for its

challenge to the rate of prejudgment interest raised in its

cross appeal, Weavers does not otherwise dispute the entry of

judgment. Under these circumstances, we do not think that CU

should be foreclosed from appealing the deductible issue

simply because it collected payment on what was essentially

an undisputed amount. Indeed, this case bears out the wisdom

of the relative flexibility incorporated in the Hougham

rule.9 Accordingly, we deny Weavers's motion to dismiss.



9. We note that we would have reached the same result by
applying the post-Hougham test adopted by at least four other
circuits. Under this test, a party who accepts the benefit
of a judgment is precluded from appealing if the
circumstances indicate a mutual intent to settle all claims
in dispute and thereby terminate the litigation. See, e.g.,
Gadsden v. Fripp, 330 F.2d 545, 548 (4th Cir. 1964). As the
discussion below amply illustrates, no such mutual intent
exists in this case.

-11- 11

B. Commercial Union's Appeal

CU challenges the district court's interpretation

of Commercial Union I and argues that the language of the

Weavers Umbrella prohibits stacking the $250,000 deductible

on top of the amount received from American Employers.

Characterizing the deductible as "alternative relief," CU

further argues that, because Weavers raised the application

of the deductible only after Commercial Union I, the issue is

waived. We address each argument in turn.

1. The $250,000 Deductible

The doctrine of the law of the case directs that a

decision of an appellate court on an issue of law, unless

vacated or set aside, governs the issue during all subsequent

stages of litigation in the nisi prius court and thereafter

on any further appeal. United States v. Rivera-Martinez, 931

F.2d 148 (1st Cir.), cert. denied, 112 S. Ct. 184 (1991).

When a case is appealed and remanded:

"the decision of the appellate court
establishes the law of the case and it
must be followed by the trial court on
remand. If there is an appeal from the
judgment entered after remand, the
decision of the first appeal establishes
the law of the case to be followed on the
second."

Id. (quoting 1B Moore's Federal Practice 0.404[1] (2d ed.

1991)). When the reviewing court, in its mandate, prescribes

that a court shall proceed in accordance with the opinion of

the reviewing court, it incorporates its opinion into its

-12- 12

mandate. Jones v. Lewis, 957 F.2d 260, 262 (6th Cir.), cert.

denied, 113 S. Ct. 125 (1992). Cf. Elias v. Ford Motor Co.,

734 F.2d 463, 465 (1st Cir. 1984) ("A mandate is completely

controlling as to all matters before the appellate court and

disposed of by its decree."); accord Rivera-Martinez, 931

F.2d at 150; Federal Deposit Ins. Corp. v. Ramirez-Rivera,

869 F.2d 624, 627 (1st Cir. 1989). The mandate constitutes

the law of the case on such issues of law as were actually

considered and decided by the appellate court, or as were

necessarily inferred from the disposition on appeal. 1B

Moore's Federal Practice 0.404[10] (2d ed. 1993).

In Commercial Union I, the mandate directed the

district court to conduct further proceedings "in accordance"

with the panel's opinion. The legal issue in Commercial

Union I was whether the Weavers Umbrella provided occurrence-

based coverage for the Peterson claims; resolution of that

issue required the panel to interpret the Weavers contract.

As noted above, the panel determined that the main body of

the Weavers Umbrella provided coverage and that the Peterson

claims resulted from an "occurrence" within the meaning of

the policy's definition of that term. Commercial Union I, 7

F.3d at 1051. Importantly, the panel stated:

Our integrated reading of the Weavers
Umbrella policy as a whole is
corroborated by the specific terms of the
Liability Amendment, which contemplate
"engineering services liability" subject
to a $250,000 deductible, in

-13- 13

circumstances where, as here, the Weavers
Umbrella "drops down" to provide primary
coverage of risks not covered by the
underlying [Travelers] insurance policy.
Thus, the Liability Amendment clearly
replaces corresponding language in the
"LIMIT OF LIABILITY" section of the main
body of the Weavers Umbrella. We find
untenable an interpretation which would
provide a $250,000 EPL "deductible" for a
risk not covered in the first place. 

Id. at 1053 (emphasis added). As the panel stated, its

reading gave "full effect" to all terms in the main body of

the Weavers Umbrella and the Weavers EPL Endorsement, thus

satisfying the obligation to give reasonable effect to all

contractual terms whenever possible. Id. at 1052 (citing

Jimenez v. Peninsular & Oriental Steam Nav. Co., 974 F.2d

221, 223 (1st Cir. 1992); Feinberg v. Insurance Co. of N.

Am., 260 F.2d 523, 527 (1st Cir. 1958) (applying

Massachusetts law)).

CU argues, in essence, that the panel's references

to the $250,000 deductible are dicta and thus cannot

constitute law of the case. See, e.g., Dedham Water Co. v.

Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir.

1992) ("Dictum contained in an appellate court's opinion has

no preclusive effect in subsequent proceedings in the same,

or any other, case."). We do not agree with CU's argument.

To resolve the legal issue presented in Commercial Union I,

it was essential that the panel, to the extent possible, give

reasonable effect to all contractual terms. As the language

-14- 14

from the opinion quoted above suggests, giving full effect to

the $250,000 deductible was an especially critical element in

resolving the case. Simply stated, it was the key piece of

the puzzle. The availability of the deductible lay at the

heart of the integrated interpretation of the Weavers

Umbrella and the Weavers EPL Endorsement. Moreover, the

panel concluded that, because the Travelers Policy did not

provide coverage for the Peterson claims, the Weavers

Umbrella "dropped down" to provide coverage and,

consequently, the $250,000 deductible applied. Therefore,

the district court correctly interpreted the law of the case

and we hold that the entry of judgment was in accordance with

Commercial Union I's mandate.

Of course, the law of the case is a prudential

doctrine and does not serve as an absolute bar to our

reconsideration of an issue. Rivera-Martinez, 951 F.2d at

150-51. We do not reconsider a decision, however, "`unless

the evidence on a subsequent trial was substantially

different, controlling authority has since made a contrary

decision of law applicable to such issues, or the decision

was clearly erroneous and would work a manifest injustice.'"

Id. (quoting White v. Murtha, 377 F.2d 428, 432 (5th Cir.

1967)). On this appeal, CU essentially argues that the third

condition obtains; that is, the Weavers contract cannot be

-15- 15

interpreted to permit application of the deductible to the

American Employers indemnification obligation.

According to CU, the $250,000 deductible should not

be stacked upon the American Employers indemnification

because Travelers, and not American Employers, is listed on

the "Schedule of Underlying Insurance" and the Weavers EPL

Endorsement did not contain a reference to "other insurance

not scheduled which may have been collectible by CU" to which

the deductible would apply.

Any confusion on the reader's part is to be

excused. After years of pointing to the deductible as prima

facie evidence of Weavers's liability,10 CU now argues that

the $250,000 deductible should not apply. Based on the plain



10. For example, the Commercial Union I panel summarized
CU's argument as follows:

[O]n CU's reading, the Weavers EPL
Endorsement extends claims-based coverage
"for those EPL claims arising out of
accidents or occurrences that took place
prior to the Weavers Umbrella period
where claim was made during the [Weavers]
policy period itself." Furthermore, CU
reasons, the language of the Liability
Amendment (amending the "LIMIT OF
LIABILITY" section so as to add a
$250,000 "self-insured retention" for
EPL) supports its claim that the main
body of the Weavers Umbrella covers EPL.
We think the plain language of the
insurance contract as a whole, and the
reasonable expectations of the parties,
are effectuated under the interpretation
urged by CU.

Commercial Union I, 7 F.3d at 1052.

-16- 16

language of the Weavers contract, we cannot agree with CU's

new argument. The Liability Amendment provides coverage for

"each occurrence not covered by said underlying insurances

[referencing the attached schedule]" subject, in the case of

engineering services, to a $250,000 deductible. Both parties

agree that the "attached schedule" refers only to the

Travelers Policy. The Liability Amendment must be read to

provide primary coverage, subject to the deductible, when the

Travelers Policy does not provide coverage. As CU repeatedly

argued, that is exactly what occurred in this case: the

Weavers Umbrella "drops down" to provide coverage not covered

by the Travelers Policy, and thus the $250,000 deductible

must apply. In short, the language of the contract requires

application of the deductible. That Weavers may have

included additional language in the insurance contract has no

bearing on the outcome.

In Commercial Union I, CU offered a somewhat

different explanation of the amount it is entitled to

recover. Rather than arguing that the deductible did not

apply because of the contractual language, CU expressly

stated that it only sought to recover that amount for which

it was "out of pocket," or $1,502,874.30 plus interest.

Under CU's view, because its "out of pocket" figure already

affords Weavers a $750,000 "savings" (ignoring interest) from

its total potential exposure (amount of Peterson claims less

-17- 17

deductible less "out of pocket" amount), they should not be

entitled to the benefit of an additional $250,000 in

"savings". Critically, however, there was never an agreement

among the parties that the deductible would not still apply

to whatever amount CU sought to recover. We can discern no

basis in the contractual language to effect what would

essentially be a "waiver" of the deductible. The fact that

CU sought judgment for an amount less than it might otherwise

be owed cannot obviate the plain language of a valid

contractual provision. Indeed, given the course of this

litigation, we find that the invitation to ignore the

$250,000 deductible is, to say the least, ironic.

In sum, we find no error in the prior panel's

interpretation of the contractual provisions or their

application in this case. Accordingly, as to the

deductibility issue, we hold that entry of judgment by the

district court is unassailably proper.

2. Waiver of the Deductibility Issue 

CU argues that, because Weavers failed to raise the

application of the deductible until after the mandate had

issued in Commercial Union I, the argument should be rejected

as untimely. We do not agree. As the foregoing discussion

indicates, there can hardly be any dispute that the

deductible was a central focus of this lengthy case. It was

the subject of intense review before the Commercial Union I

-18- 18

panel. Given the pages of record devoted to the deductible,

it would simply be untenable to find waiver had occurred with

respect to that issue. We decline to do so and hold that

there was no such waiver.

C. Weavers's Cross Appeal

On its cross appeal, Weavers makes two alternative

arguments: (1) that in diversity actions brought under the

federal Declaratory Judgment Act, the determination of

prejudgment interest is governed by federal law; and (2)

that, if state law is to apply, the district court applied

the wrong law. We address each argument in turn.

1. Prejudgment Interest Under the Declaratory

Judgment Act

In determining the rate of prejudgment interest,

the district court held that, because jurisdiction was based

on diversity, Massachusetts law governed. Weavers argues

that federal law should govern. Reduced to its essence,

Weavers's theory is that the "procedural" nature of the

Declaratory Judgment Act ("DJA"), 28 U.S.C. 2201 and

2202,11 displaces a "contrary state provision" under the



11. Captioned "Creation of remedy," 28 U.S.C. 2201
provides in relevant part:

In a case of actual controversy within
its jurisdiction, . . . any court of the
United States, upon the filing of an
appropriate pleading, may declare the
rights and other legal relations of any
interested party seeking such

-19- 19

rule of Erie R.R. v. Tompkins, 304 U.S. 64 (1938), and its

progeny. Thus, Weavers argues that if the district court

grants "[f]urther necessary or proper relief" under the DJA

by awarding prejudgment interest, it should apply the federal

rule governing prejudgment interest under which, Weavers

says, prejudgment interest is calculated at the "market" rate

of interest. We find Weavers's analysis to be flawed.

Where, as in this case, jurisdiction is based on

diversity, familiar principles control. "[F]ederal courts

sitting in diversity jurisdiction are obligated to apply

state law unless applicable federal procedural rules are

sufficiently broad to control a particular issue before the

court." Daigle v. Maine Medical Ctr., Inc., 14 F.3d 684, 689

(1st Cir. 1994) (citing Walker v. Armco Steel Corp, 446 U.S.

740, 749 (1980); Hanna v. Plumer, 380 U.S. 460, 470-71



declaration, whether or not further
relief is or could be sought. Any such
declaration shall have the force and
effect of a final judgment or decree and
shall be reviewable as such.

28 U.S.C. 2201 (1988)

Captioned "Further relief," 28 U.S.C. 2202
provides:

Further necessary or proper relief based
on a declaratory judgment or decree may
be granted, after reasonable notice and
hearing, against any adverse party whose
rights have been determined by such
judgment.

28 U.S.C. 2202 (1988)

-20- 20

(1965)); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S.

22, 26 (1988) (where federal procedural statute is involved,

a court must determine if it is "sufficiently broad to

control the issue").

The DJA creates a particular remedy where a federal

district court already has jurisdiction to entertain a suit.

See, e.g., Nashoba Communications v. Town of Danvers, 893

F.2d 435, 437 (1st Cir. 1990). Issues that would be governed

by state law in a coercive action are equally governed by

state law when declaratory relief is sought. 10A Charles A.

Wright et al., Federal Practice and Procedure, 2771 (2d ed.

1983) (hereinafter, "Wright, Miller, & Kane"). Indeed, as

one commentator has noted:

Since the declaratory remedy is not
intended to affect substantive rights,
federal substantive rights will, of
course, rule the adjudication of federal
rights. Similarly, just as in any other
type of civil action where the
substantive issues are non-federal, Erie
R.R. v. Tompkins requires a careful and
loyal application of state substantive
law . . . .

6A Moore's Federal Practice 57.02[5] (2d ed. 1994).

Notwithstanding these well-established principles

governing both federal-state choice of law and declaratory

judgment actions, Weavers argues, as summarized above, that

federal law should govern prejudgment interest. In

circumstances such as this where a federal court is

confronted with a claim that a state law conflicts with a

-21- 21

federal procedural rule or statute, the court must first ask

whether the dispute falls within the scope of the federal

statute. If a conflict exists, then the court must then ask

whether the statute is a valid exercise of Congress's

authority. See, e.g., Stewart, 487 U.S. at 26-27. If no

federal statute or procedural rule covers the point in

dispute, a court must then proceed to evaluate "whether

application of federal judge-made law would disserve the so-

called `twin aims of the Erie rule: discouragement of forum

shopping and inequitable administration of the laws.'" Id.

at 27 n.6 (quoting Hanna, 380 U.S. at 468). If application

of federal law would disserve these two policies, state law

applies. Id.

We find that Weavers's theory fails on the first

inquiry: no conflict exists between the "procedural" DJA12

and state prejudgment interest law. Weavers reads the DJA

broadly: under Weavers's interpretation, a federal court

entertaining a declaratory judgment action may, in effect,



12. As Weavers points out, courts and commentators have
characterized the DJA as "procedural." See, e.g., Skelly Oil
Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)
("`[T]he operation of the Declaratory Judgment Act is
procedural only.' . . . Congress enlarged the range of
remedies available in the federal courts but did not extend
their jurisdiction." (citation omitted) (dicta)); Charles A.
Wright, Law of Federal Courts 100 (5th ed. 1994) ("[The
DJA] may be regarded as `procedural' and is expressly
authorized by Act of Congress."). For the purposes of
addressing Weavers's argument only, we adopt this
characterization.

-22- 22

apply a rule of decision13 that would fashion "further

relief" in a more restrictive manner than would apply in a

non-declaratory diversity case. Thus, according to Weavers,

a conflict with state law arises.14

The plain language of 28 U.S.C. 2201 and 2202

does not support Weavers's broad reading. Section 2201

authorizes a judicial declaration "whether or not further

relief is or could be sought," thus "indicat[ing] that

declaratory relief is alternative or cumulative and not

exclusive or extraordinary." Fed. R. Civ. P. 57 Committee

Notes. Section 2202 gives effect to the cumulative nature of

the declaratory device15 by authorizing a district court to



13. When a district court sits in federal question
jurisdiction, prejudgment interest has been determined by
federal common law in the absence of a specific provision in
the underlying statute. See, e.g., Robinson v. Watts
Detective Agency, Inc., 685 F.2d 729, 741 (1st Cir. 1982),
cert. denied, 459 U.S. 1105, 1204 (1983). Thus, Weavers
appears to argue that federal common law should similarly
apply in the context of a diversity-based declaratory
judgment action. We note, however, that in at least one
federal question case, we held that a district court may
properly look to state law where the underlying federal law
is silent as to awarding prejudgment interest. Colon Velez
v. Puerto Rico Marine Mgmt., Inc., 957 F.2d 933, 941 (1st
Cir. 1992). Hence, we held that the district court did not
abuse its discretion in levying prejudgment interest at the
12% rate applicable under local law. Id.

14. Notably, notwithstanding the long history of the DJA,
Weavers does not point to a single case adopting its view.

15. On this point we also note that under Fed. R. Civ. P.
54(c), a court, in rendering judgment, may grant the
prevailing party any relief to which that party is entitled,
even if such relief was not, but could have been, demanded in
the original pleadings. See 6A Moore's Federal Practice 

-23- 23

grant additional relief consistent with the underlying

declaration even though the right to the relief may arise

long after the court has entered its declaratory judgment.

See, e.g., Gant v. Grand Lodge, 12 F.3d 998, 1002 (10th Cir.

1993) (citing Wright, Miller, & Kane 2771), cert. denied,

114 S. Ct. 1834 (1994). The fact that a declaratory action

was brought in lieu of an action seeking coercive relief

"`does not merge a claim in the judgment or bar it.'" Gant,

12 F.3d at 1002 (quoting Wright, Miller, & Kane 2771).

Simply stated, the DJA complements, but does not

displace, relief available under applicable law.

Accordingly, we do not share Weavers's view that the

provision for district courts to grant "further necessary or

proper relief" is an authorization to formulate a rule of

decision granting less relief than would otherwise have been

available had a coercive action been brought instead.16

Because no conflict exists between a specific

federal rule or statute and state law, we then must determine



57.10 (2d ed. 1994).

16. We note here that in Gant the Tenth Circuit reaffirmed
an earlier holding interpreting section 2202 as authorizing a
district court sitting in a diversity-based declaratory
proceeding to grant additional relief, not otherwise
authorized by state law, if that relief were "`necessary or
proper to effectuate relief based upon the declaratory
judgment rendered in the proceeding.'" Gant, 12 F.3d at 1003
(quoting Security Ins. Co. v. White, 236 F.2d 215, 220 (10th
Cir. 1956)). We take no position on the Tenth Circuit's
interpretation of the statute.

-24- 24

whether application of a federal-judge made rule governing

the calculation of prejudgment interest would disserve the

twin aims of Erie. Assuming for the moment that a federal

court would, as Weavers argues, calculate prejudgment

interest according to the "market" rate, the difference

between the application and nonapplication of a state law

under which interest is calculated at 12% could make a

substantial difference in terms of the plaintiff's ultimate

monetary recover. Moreover, if the state law were not to

apply, the incentives for forum shopping are plain. A

plaintiff would likely bring his action in state court to

take advantage of the more favorable prejudgment interest

law; similarly, a non-Massachusetts defendant would seek to

remove the action to avoid substantial additional damages.

Because the twin aims of Erie would not be served by the

application of judge-made federal law, state law must apply.

Stated another way, prejudgment interest is substantive law

and, therefore, state law must be applied in diversity-based

proceedings. This conclusion comports with our repeated

statements that when jurisdiction is diversity-based, a

district court should look to the law which a state court

sitting in that jurisdiction would apply in awarding

prejudgment interest. See, e.g., Aubin v. Fudala, 782 F.2d

287, 289 (1st Cir. 1986); Roy v. Star Chopper, Inc., 584 F.2d

-25- 25

1124, 1135 (1st Cir. 1978), cert. denied, 440 U.S 916 (1979).

In sum, a district court sitting in diversity when

it awards prejudgment interest pursuant to a declaratory

judgment action must apply the law of the state in which the

court sits, including that state's conflict-of-law

principles. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S.

487 (1941). Here, the parties agree that Massachusetts law

governs the substance of the underlying transaction. Under

these circumstances, Massachusetts law directs that a court

should apply Massachusetts law in calculating prejudgment

interest. See, e.g., Morris v. Watsco, Inc., 385 Mass. 672,

674-75 (1982). Thus, we hold that the district court

properly calculated prejudgment interest using Massachusetts

law.

2. The Applicable Rate of Interest Under 

Massachusetts Law

Weavers next argues that even if Massachusetts law

is to govern the award of prejudgment interest, the district

court erred in awarding prejudgment interest pursuant to

Mass. Gen. L. ch. 231, 6C17 rather than under Mass. Gen.



17. Captioned, "Interest added to damages in contract
actions," Mass. Gen. L. ch. 231, 6C provides in relevant
part:

In all actions based on contractual
obligations, upon a verdict, finding or
order for judgment for pecuniary damages,

-26- 26

L. ch. 107, 3.18 Weavers reasons that, because the

Massachusetts declaratory judgment act, Mass. Gen. L. ch.

231A, does not specify the rate of interest to be awarded,

there is no applicable "provision of law for a different

rate" and, thus, chapter 107, section 3 is not supplanted.

In essence, Weavers seeks to avoid application of section 6C

by recharacterizing this case as a "declaratory judgment

action." We decline to do so.19



interest shall be added by the clerk of
the court to the amount of damages, at
the contract rate, if established, or at
the rate of twelve per cent per annum
from the date of the breach or demand.
If the date of the breach or demand is
not established, interest shall be added
by the clerk of the court, at such
contractual rate, or at the rate of
twelve per cent per annum from the date
of the commencement of the action . . . .

Mass. Gen. L. ch. 231, 6C (Supp. 1993)

18. In relevant part, Mass. Gen. L. ch. 107, 3 provides:

If there is no agreement or provision of
law for a different rate, the interest of
money shall be at the rate of six dollars
on each hundred for a year . . . .

Mass. Gen. L. ch. 107, 3 (1990)

19. Weavers makes two additional arguments against
application of a 12% interest rate: (1) that the rate is
"unreasonably high"; and (2) that the statute violates the
Massachusetts Constitution because of changed economic
conditions. Weavers's first contention is properly directed
to the Massachusetts legislature. Whether Massachusetts
should adopt a lower rate of interest or a scheme which
refers to the "market" rate of interest is not a matter for a
federal court to decide.

-27- 27

As explained in detail above, the declaratory

device is a remedy by which parties may seek a declaration as

to their substantive rights. A declaratory judgment is not a

theory of recovery. It is clear that, in this case, the

underlying substantive theory is contractual. The plain

language of chapter 231A, section 6C establishes conclusively

that it is to govern the award of prejudgment interest in

contractual disputes. Accordingly, Weavers's reasoning must

be rejected. The district court properly awarded interest

under chapter 231A, section 6C.

III. III.

CONCLUSION CONCLUSION

For the foregoing reasons, the motion to dismiss is

denied and the decision of the district court is

Affirmed. Each party shall bear its own costs. Affirmed. Each party shall bear its own costs.



As for Weavers's second contention, we are at a
loss to determine its theory for unconstitutionality.
Indeed, Weavers does not point to a specific provision of the
state constitution that the prejudgment interest rate is said
to violate. Moreover, Weavers offers no developed
argumentation on this point. We require far more, especially
when we are asked to reach a state constitutional question.
Accordingly, we deem this argument waived. See, e.g., Ryan
v. Royal Ins. Co. of Am., 916 F.2d 731, 734 (1st Cir. 1990)
("issues adverted to on appeal in a perfunctory manner,
unaccompanied by some developed argumentation, are deemed to
have been abandoned").

-28- 28