Zimmerman, J.
 

 Plaintiff testified that she and Brunny were married in Cleveland, December 16,1901; that he worked at several factories in or near there as a patternmaker and operated a shop of his own for a period of years; that after their marriage he made ■several trips to western states, and to Alaska on two ■occasions for protracted stays; that during all these absences he wrote her frequently; that on Brunny’s second trip to Alaska he was injured in some manner, ■came home in October 1929, afterwards appeared to be ailing and was finally unable to obtain work.
 

 Plaintiff further testified that her husband departed for the west on July 24, 1936, saying he planned to ■do some prospecting in the hills of California, and that •she never saw him after that, although they were on friendly terms when he left.
 

 In addition, plaintiff testified that before their marriage Brunny lost the first joint of his
 
 right
 
 thumb when it. came in contact with a ripsaw during the time he was learning the trade of patternmaking'.
 

 Plaintiff identified two pictures of Brunny which she
 
 *89
 
 introduced in evidence — the first, a tintype, taken about the time she met him, suggesting an incomplete-right thumb and the second, a snapshot, from which it might be inferred that the left thumb was intact.
 

 Besides Brunny’s injured thumb, plaintiff testified' there was an anchor tattooed on one of his forearms— she couldn’t remember which. Continuing, plaintiff' testified that after Brunny’s disappearance in 1936, she attempted to locate him by inquiry and letter, but without success.
 

 The last communication she had from him, which-was offered and received in evidence, was written on a penny postcard, enclosed in an envelope in the upper left-hand corner of which was printed and written, “After 10 days return to Roy C. Brunny at address below Marysville, Calif.” The envelope was postmarked Marysville, California, October 19, 1936. In this communication he complained of feeling ill and', requested that certain of his personal effects be forwarded to him by express to Marysville.
 

 Plaintiff was shown two photographs purporting to be of Brunny and taken in California presumably after his disappearance in 1936. She denied that either represented her husband.
 

 She further testified that after she reported1 Brunny’s disappearance to representatives of the company, she furnished them a statement containing information about her family. Plaintiff then rested.
 

 In support of its case, defendant introduced in evidence (photostat substituted) an application, dated' December 16, 1901, and purportedly signed by Brunny,. for a license from the Probate Court of Cuyahoga county authorizing the solemnization of a marriage between Roy C. Brunny and Olga Agnes Schroder, both aged 22. Defendant also introduced in evidence-(photostat substituted) a printed “Application for
 
 *90
 
 Position” with the White Motor Company, Cleveland, dated May 21, 1926, bearing the signature, “R. C. Brunny,” as applicant, in two places and reciting, opposite a line reading “Physical Defects if any,” “Left thumb off at first joint.”
 

 Besides, defendant called a witness who testified that he had known Brunny since about 1900 and had worked with him in Cleveland. He positively identified two of the three photographs introduced by the defendant as being of Brunny, one of them purportedly taken in California. He was uncertain about the third and last one shown him. This witness stated that Brunny “was always taking trips somewheres. He was going prospecting the biggest part of the time.”
 

 Defendant also called two witnesses — a photographer familiar with the making of tintypes and a tailor of long experience — whose testimony tended to prove that the tintype of Brunny introduced in evidence by plaintiff represented a reverse image of the subject, so that what appeared to be his right hand in the picture was in reality his left.
 

 Then defendant offered in evidence the deposition of an individual, taken in California in 1946, who claimed to be Roy C. Brunny. This witness deposed that he was born in Massillon, Ohio, August 4, 1879, and that his occupations were “patternmaking and. mining and traveling.” He gave his own name as Roy Clifford Brunny and gave the names of his father and mother, with the approximate dates of their -deaths. He listed a number of the places where he had worked in Ohio, including Cleveland, and described the loss of the first joint of the thumb of his
 
 left
 
 hand by a power ripsaw in the latter nineties. He gave his wife’s maiden name as Olga Agnes Schroder, •.stated she was born in Berlin, G-ermany, in January 1879, and that he was married to her on December 16,
 
 *91
 
 1901. In response to the question, “Do you remember the name of the minister who performed the marriage-ceremony?”, the answer was, “Beverend Atkins. It’s-a long time ago to remember something you are not interested in.” The witness then recited the names-of plaintiff’s sisters and brothers and described the-places where some of them had lived in Cleveland as-well as different locations where he and his wife had resided in that city.
 

 He related his travels through the western states-of this country and the territory of Alaska, displaying familiarity with the localities mentioned. He referred to an anchor tattooed on his right forearm and told the-circumstances under which it had been placed there.
 

 He stated that he had last seen Olga Brunny, “ten,, eleven, twelve years ago. I forget just the date,” and that he had left Cleveland in June or July. He described some of his activities and experiences in Oregon and California since 1936 and stated that he had last communicated with his wife in writing from“Marysville” a number of years before, and that in-response to this communication he received “a trunk containing my tools and clothes which I had written for.”
 

 Further, the deponent identified the three photographs, introduced in evidence by the defendant, as-being of himself. On one of the photographs there-was a tag across the chest of the subject, bearing the notation, “Marysville Police 9249.” He described his wife generally, but was uncertain as to the color of her eyes.
 

 Defendant also called as a witness a handwriting-expert who expressed the opinion, giving reasons therefor, that all the signatures of “Brunny” received in evidence were by the same hand, including the signature appended to the California deposition, although
 
 *92
 
 ■he admitted that among the signatures there was some variation in the formation of certain of the letters.
 

 A shorthand reporter took the stand at defendant’s instance and testified that he had transcribed the testimony of plaintiff in a deposition which she had given 'in December 1945, and that questions were asked her •and answered by her as follows:
 

 “Q. Did Mr. Brunny have any identifying marks •on him? A. Yes; I told the Prudential man he had a piece of his thumb taken off.
 

 “Q. Which thumb? A. I don’t know which hand •anymore. I don’t remember. I tried to think differ•ent times. I don’t remember that. It was so little that you could hardly notice it. Nobody would ever notice it.”
 

 A “presumption” has been defined as “a rule which the law makes upon a given state of facts.”
 
 Ensel
 
 v.
 
 Lumber Ins. Co. of New York,
 
 88 Ohio St., 269, 282, 102 N. E., 955, 959;
 
 Glowacki, a Minor,
 
 v.
 
 North Western Ohio Ry. & Power Co.,
 
 116 Ohio St., 451, 459, 157 N. E., 21, 23, 53 A. L. R., 1486, 1490.
 

 Although criticized by Dean Wigmore (9 Wigmore ■on Evidence [3 Ed.], 472, Section 2531&) and others, the general rule which prevails in Ohio and elsewhere is that “if a husband leaves his family and usual place ■of residence, and goes to parts unknown, or a distant state, and is not heard from for a period of seven years, a presumption arises that he is dead.”
 
 Rosenthal v. Mayhugh,
 
 33 Ohio St., 155, first paragraph of the syllabus.
 

 Such presumption, though, is not conclusive and may be rebutted by proof of facts which tend to show 'the contrary, or which raise a conflicting presumption. 13 Ohio Jurisprudence, 372, Section 18.
 

 The presumption is no more than prima facie and may be shown to be ill founded by counterevidence.
 
 Youngs
 
 v.
 
 Heffner,
 
 36 Ohio St., 232, 237.
 

 
 *93
 
 It is firmly settled in Ohio that the burden which rests upon the plaintiff to establish the material averments of his cause of action by the preponderance of all the evidence, never shifts. And in a case where the plaintiff may be aided by a rebuttable presumption of law or by such facts as prima facie support his contention his opponent need do no more than counterbalance the presumption or prima facie case; he is not required to overbalance or outweigh it. So, where the whole of the evidence upon the issue involved leaves the case in equipoise, the one affirming must lose.
 
 Klunk
 
 v.
 
 Hocking Valley Ry. Co.,
 
 74 Ohio St., 125, 77 N. E., 752;
 
 Ginn, Admr.,
 
 v.
 
 Dolan,
 
 81 Ohio St., 121, 90 N. E., 141, 135 Am. St. Rep., 761, 18 Ann. Cas., 204.
 

 Thus a party against whom a presumption is invoked, removes its effect when he produces rebutting evidence of a character which leaves the evidence as a whole in such a state that it cannot reasonably be said that the presumption should prevail over the evidence offered to destroy it.
 

 Presumptions may supply the want of facts, but they cannot stand against positive facts.
 
 Wallace’s Lessee
 
 v.
 
 Miner,
 
 6 Ohio, 366, 370. Compare 16 American Jurisprudence, 23, Section 24.
 

 This court has stated that the presumption against suicide "is in the nature of evidence” and loses its force in the face of proof indicating the contrary.
 
 Mitchell
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 110, 19 N. E. (2d), 769. Compare 17 Ohio Jurisprudence, 89, Section 70.
 

 We are aware that in a number of cases it has been held, upon the particular facts, that where the presumption of death obtains by a showing of seven years unexplained absence and rebuttal evidence is offered, a jury question is presented. 16 American Jurisprudence, 23, Section 23; 25 Corpus Juris Secundum, "Death,” 1063, Section 7;
 
 Shaw
 
 v.
 
 Prudential
 
 
 *94
 

 Ins. Co. of America,
 
 158 Wash., 43, 290 P., 694. Compare
 
 Hrybar v. Metropolitan Life Ins. Co.,
 
 140 Ohio St., 437, 45 N. E. (2d), 114.
 

 However, in a case, where the rebuttal evidence in its
 
 cumulative effect
 
 at least counterbalances the presumption of death, the one relying solely upon the presumption to make his case must fail.
 

 A court should not invade the province of the jury, but in a case like the present one, where upon all the evidence adduced, reasonable minds could not fairly conclude that the presumption should stand, it disappears, and if in addition to such presumption there is no evidence tending to show that the absentee is in fact dead, the duty devolves upon the trial court to direct a verdict or to render judgment for the defendant upon his motion therefor. It is important to note that the plaintiff herein relied exclusively on the presumption of death to establish her case.
 

 Upon the basis of what has been said, the judgment of the Court of Appeals in reversing the judgment of the Municipal Court is affirmed, but in remanding the cause for retrial is reversed, and final judgment is entered for the defendant.
 

 Judgment accordingly.
 

 Matthias, Hart, Stewart and Turner, JJ., concur. Taft, J., not participating.