INLAND RIVERS SERVICE CORP., APPELLANT, *v.* HARTFORD FIRE INSURANCE CO., APPELLEE.

(No. 80-568—Decided April 8, 1981.)

*Messrs. Lindhorst & Dreidame* and *Mr. James M. Moore,* for appellant.

*Mr. Edward K. Halaby,* for appellee.

*Per Curiam.* The cause before us concerns recovery for a loss under a "perils of the sea" clause of a marine insurance policy.

This clause reads, in relevant part: "Touching the adventures and perils which this company is contented to bear and take upon itself, they are of the waters named herein, fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein."

Marine insurance policies have long insured against various "adventures and perils" which may befall vessels and cargo. Usually included among those risks are perils "of the seas" or "of the waters." Coverage extends to fortuitous losses occurring through extraordinary action of the sea. Extraordinary action of the wind and waves is a sea peril, as are collision, foundering, stranding, and striking on rocks and icebergs. Gilmore & Black, The Law of Admiralty (1975 Ed.), at pages 72-73. Even damage to a moored vessel by its striking a sharp object constitutes a peril of the sea where it results

from extraordinary and unforeseen factors and not from the inherent weakness of the vessel itself. Annotation, 85 A.L.R. 2d 446, 448. Ordinary wear and tear on a vessel is not, however, contemplated as a peril of the sea. 11 Couch on Insurance 434, Section 43:112.

It is undisputed that one seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy. See, generally, 30 Ohio Jurisprudence 2d 934, Insurance, Section 1024. The issue in the instant case is whether, under a "perils of the sea" clause, the insured sustains this burden by merely showing that the probable cause of a leak (which results in a loss) is external to the vessel, or whether the insured must also show exactly who or what caused the leak.

Paragraph six of the syllabus in *Western Insurance Co.* v. *Tobin* (1877), 32 Ohio St. 77, reads as follows: "When a steamboat is shown to have been seaworthy at the time she was insured, and no intervening circumstance occurs to render her unseaworthy, her seaworthiness is presumed to continue; but when, during the life of the policy, she springs a dangerous leak, without apparent cause, a new presumption arises—that of unseaworthiness; yet, as this new presumption is not a conclusive one, the owners are not required, to entitle them to recover for the loss, to show the identical cause of her loss, but may show a probable cause."

Applying *Tobin, supra,* to the instant case, we conclude that the record shows that the barge was seaworthy when it was insured and that no intervening circumstance arose to render it unseaworthy. The record further shows that the barge sprang a dangerous leak without apparent cause, thus raising a rebuttable presumption that it was unseaworthy when it sank. To overcome that presumption, the appellant needed to show a probable cause of the loss by a peril of the sea. This burden could be satisfied by showing that the loss probably resulted from a fortuitous cause *external* to the barge. However, appellant had no burden to prove exactly who or what may have caused the dangerous leak.

The record reveals that appellant offered expert evidence that a hole found in the side plate of the barge, below the water line, had been "punched in" by an instrumentality external to

the vessel, and that the hole was the cause of the sinking. We find this evidence to be sufficient to support the trial court's finding that appellant overcame the presumption of unseaworthiness and carried its burden of persuading the finder of fact that the loss resulted from a covered "peril of the sea."

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C. J., dissenting. Emulating Sherlock Holmes, who once solved a crime based on the dog that did *not* bark, the majority inferentially reasons that a peril of the sea caused the sinking of the barge based on what was *not* proved at trial. Unlike the famous fictional detective, however, the majority floats far off course on their voyage of analyzing the burden of proof in marine casualty litigation. I cannot sign aboard for this cruise and must, therefore, respectfully register my dissent.

Initially, it should be noted that the phrase "peril of the sea" has been defined as:

"Perils of the sea embrace all kinds of marine casualties, such as shipwreck, foundering, stranding, collision, and every specie of damage done to the ship or goods at sea by the violent action of the winds or waves. *They do not embrace all losses happening on the sea,* or a peril whose only connection with the sea is that it arises aboard ship, or all damage of which the sea is the cause, but only those perils which are of the sea." (Emphasis added.) 45 Corpus Juris Secundum, Insurance, Section 854, at pages 934-935. See, also, Gilmore & Black, The Law of Admiralty (1975 Ed.), at pages 72-73.

It is a universal principle of insurance and maritime law that the insured has the burden of proving, by a preponderance of the evidence, that the damage to the vessel was caused by an insured risk, *i.e.,* a peril of the sea. *S. Felicione & Sons Fish Co.* v. *Citizens Cas. Co.* (C.A. 5, 1970), 430 F. 2d 136, certiorari denied, 401 U. S. 939; *Northwestern Mut. Life Ins. Co.* v. *Linard* (C.A. 2, 1974), 498 F. 2d 556; *Automobile*

*Ins. Co. of Hartford* v. *Central Nat. Bank Sav. & Trust* (The Lakeland cases) (C.A. 6, 1927), 20 F. 2d 619; *Kermani* v. *Ins. Co. of North America* (1932), 142 Misc. 542, 255 N.Y.Supp. 687; 19 Couch on Insurance 2d 655, Section 79:361.

While the presumptions of *Western Insurance Co.* v. *Tobin* (1877), 32 Ohio St. 77, may shift the burden of producing evidence back and forth between the parties (see Ray, Burden of Proof and Presumptions, 13 Tex. L. Rev. 33, 44), the burden of proof, also known as the burden of persuasion, remains with the insured throughout the trial. The burden of proof does not shift to the insurer to prove that the loss was caused by something other than a peril of the sea. See, generally, *Brunny* v. *Prudential Ins. Co.* (1949), 151 Ohio St. 86.

Applying the foregoing principles to the facts at bar, it is evident that the record harbors two fundamental flaws. First, a review of the transcript unveils the following colloquy between the trial judge and plaintiff's-appellant's counsel:

"At this time, the Court is still unaware of what caused the sinking of the barge, *I don't think the burden is upon you to show me what caused it to sink."*

This statement vividly demonstrates to me that the trial court misperceived the burden of proof in this case and improperly relieved the insured of this burden by assigning it, instead, to the insurer. This, by itself, in my estimation, constitutes reversible error.

The second flaw relates to the following statement by the trial judge, *the finder of fact* in this case:

"We can go into great lengths to find out what caused it [the hole in the barge].***The thing before the Court is that the barge did sink and it ended up on the bottom 25 to 50 feet down, and that's where we are right now. What caused it I don't know, and I don't think you know. *I don't think anyone knows at this point."* (Emphasis added.)

Apparently, the evidence presented after this remark did not shed any light on the cause of the sinking.

Moreover, when announcing his final decision on December 20, 1977, the trial judge stated:

"As to the cause of the sinking, in this Court's mind it still remains unresolved, and unanswered."

It seems to me that if the finder of fact could not conclude

what caused the hole or the sinking, then the insured, the party with the burden of proof, did not succeed in demonstrating, by a preponderance of the reliable, probative and credible evidence, the probability, or even possibility, that such sinking was caused by a peril of the sea, a covered risk. *Tobin, supra,* at page 92. Evidently, the finder of fact felt that the connection between the construction vessels, the alleged peril of the sea, and the sinking was much too tenuous.

My reading of the trial judge's comments illustrates that he not only believed that the barge owner had not demonstrated that the sinking was caused by a peril of the sea, but also, that, in his mind, it was equally plausible that the sinking was caused by a leak within the barge itself, by bad bottomry or by some other non-covered risk.

Thus, construing the trial judge's comments about the conflicting expert testimony and all the evidence in a light most favorable to the barge owner, we have, at most, a case that is "in equipoise." *Northwestern Mut. Life Ins. Co., supra,* at page 560. Much like in baseball where "a tie goes to the runner," an insurance case in equilibrium "goes to the insurer" when the insured fails to meet its burden of proof.

I am fully cognizant of the fact that the insured, in cases like this, does not have to prove the exact cause of the sinking or offer into evidence the precise submerged object that might have caused the sinking. See Annotation, 31 A.L.R. 1378. I dissent on the basis that the finder of fact and a unanimous Court of Appeals, though rendering different judgments, concluded that the evidence did not preponderate in favor of attributing the sinking to a covered risk. Since the trial judge was in a better position than we are to evaluate the conflicting evidence and credibility of the witnesses, I submit that it is more appropriate to defer to his analysis of the competing inferences.

The record in this case is voluminous. The pleadings, transcript, exhibits and appendices occupy the better part of a file cabinet. After a long trial and a fully-developed appeal, the finder of fact and a unanimous Court of Appeals concluded, in essence, that the barge sank in some unknown manner, by some unknown object, at some unknown time. We sit as an appellate court with a limited scope of review; we do not sit as a

38

roving band of claims adjusters with Ouija boards. How this court can, eight years after the sinking of this barge, substitute its judgment for the finder of fact and conclude that the sinking was, indeed, caused by a covered risk, remains, to me, an existential mystery.