STADIUM LINCOLN–MERCURY, Inc., Plaintiff,

v.

HERITAGE TRANSPORT, Appellant;  Great
American Insurance Company, Appellee.

[Cite as *Stadium Lincoln–Mercury, Inc. v. Heritage Transport*,
160 Ohio App.3d 128, 2005-Ohio-1328.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 67.

Decided March 18, 2005.

Harrington, Hoppe & Mitchell, Ltd., and Michael J. McGee, for appellant.

Mazanac, Raskin & Ryder Co., L.P.A., John T. McLandrich, Robert H. Stoffers, and Frank H. Sciadone, for appellee.

---

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Third-party plaintiff-appellant, Heritage Transport, appeals the decision of the Mahoning County Court of Common Pleas that granted summary judgment to third-party defendant-appellee, Great American Insurance Company. Heritage claims that the trial court erred by not finding that there was a genuine issue of material fact regarding whether Great American breached the contract at issue by not paying the costs of the underlying lawsuit. It further argues that the trial court erred by not finding that there was a genuine issue of material fact regarding whether Great American breached the contract by not making certain other payments in accordance with the policy.

{¶ 2} The trial court properly granted summary judgment to Great American on every issue but one. There is a genuine issue of material fact regarding whether Great American improperly reduced its payment to Heritage by the towing expenses it paid to clean up after the accident. For this reason, the trial court's decision is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

## Facts

{¶ 3} Stadium Lincoln–Mercury, Inc., contracted with Heritage to transport five vehicles from an auction to Stadium Lincoln–Mercury. Heritage's truck was involved in an accident while transporting those vehicles. All five of the vehicles were damaged; two were totaled. The vehicles were all towed away from the scene of the accident and put into storage.

{¶ 4} Great American insured Heritage against this eventuality in an inland marine insurance policy. That policy covered losses caused by physical damage to property that Heritage was transporting for others. Heritage filed a claim with Great American for the damage to the vehicles it was transporting for Stadium Lincoln–Mercury. Great American's claims adjuster in this case, Greg Patterson, attempted to settle that claim with Stadium but was unsuccessful.

{¶ 5} Since Great American could not reach an agreement with Stadium Lincoln–Mercury, it made payments directly to Heritage. Those payments totaled $78,825.10. According to Patterson's first affidavit, these payments reflected the cost to repair the three damaged vehicles and the retail value of the

totaled vehicles, minus the amount Great American paid for towing and storage charges. In his deposition, Patterson indicated that at least one of Great American's payments was reduced by the salvage value of the totaled vehicles. In a later affidavit, Patterson swore that the payments to Heritage were not reduced by the amount Great American paid for towing and storing the cars and that it had paid Heritage the salvage value of the vehicles.

{¶ 6} Stadium Lincoln–Mercury eventually filed a complaint naming Heritage as the sole defendant. Heritage then filed a third-party complaint against Great American, which sounded in breach of contract. Great American subsequently moved for summary judgment. It attached, among other things, Patterson's first affidavit and his deposition testimony. Heritage responded to this motion and cross-moved for summary judgment. Great American then supplemented its motion for summary judgment and replied both to Heritage's motion for summary judgment and its memorandum in opposition to Great American's motion for summary judgment. Great American attached Patterson's second affidavit to this response.

{¶ 7} After reviewing these materials, the trial court denied Heritage's motion for summary judgment and granted summary judgment to Great American.

{¶ 8} Heritage argues the following assignment of error on appeal:

{¶ 9} "The trial court erred in granting summary judgment in favor of Great American Insurance Company in Dismissing Heritage Transport's third-party claim."

{¶ 10} Heritage makes two distinct arguments within this assignment of error. First, it contends that the trial court erred by concluding that, as a matter of law, Great American did not owe Heritage a duty to defend it from Stadium Lincoln–Mercury's lawsuit. Second, it claims that there were genuine issues of material fact regarding whether Great American breached its contract with Heritage by not making certain payments. These issues will be discussed separately.

## Standard of Review

{¶ 11} In its sole assignment of error, Heritage argues that the trial court improperly granted summary judgment to Great American. When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is proper only when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude that no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d

1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

{¶ 12} When moving for summary judgment, a party must produce some facts that suggest that a reasonable fact-finder could rule in her favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264.

## Inland Marine Insurance Background

{¶ 13} In order to place our discussion in context, we must explain what inland marine insurance is and the risk it protects against. Inland marine insurance "is a broad type of insurance that encompasses a range of specific risks" that are generally related to the transportation of goods or information. Couch on Insurance (3d Ed.1996) Section 1.30. It is called "inland marine" insurance because it grew out of the "marine" insurance that insurers offered to merchants who were shipping goods overseas. Couch on Insurance at Section 154.4.

{¶ 14} There are several different types of inland marine insurance, such as bailees' customers policies, policies covering mobile equipment, and policies insuring bridges, tunnels, and piers. Couch on Insurance at Section 154.3. The category of inland marine insurance at issue in this case is the insuring of goods in domestic transit, such as goods being transported by a shipper. Id. Thus, a shipping company, such as Heritage, buys inland marine insurance to protect the property of others, such as Stadium Lincoln–Mercury, while the shipping company is transporting the property from one location to another.

## Duty to Defend

{¶ 15} Heritage argues that its policy with Great American is ambiguous regarding whether Great American has a duty to defend Heritage in Stadium Lincoln–Mercury's lawsuit against Heritage. Since it believes that the policy is ambiguous, Heritage claims that it must be read in its favor and that the trial court erred in concluding that Great American did not have a duty to defend Heritage.

{¶ 16} In response, Great American argues that the policy is clear and unambiguous. It then invokes *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216,

2003-Ohio-5849, 797 N.E.2d 1256, to strictly apply the plain language of the contract and affirm the trial court's conclusion that it does not owe Heritage a duty to defend it from Stadium Lincoln–Mercury's lawsuit.

{¶ 17} In order to recover for a breach of an insurance contract, a plaintiff must prove that a policy of insurance existed and that the claimed loss was covered under the policy. *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.* (1981), 66 Ohio St.2d 32, 34, 20 O.O.3d 20, 418 N.E.2d 1381. Courts are routinely asked to interpret insurance contracts to determine whether the policy covered the claimed loss. When doing so, courts must construe those contracts in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

{¶ 18} A court's role when asked to interpret a contract is to give effect to the intent of the parties to the agreement. *Galatis* at ¶ 11. The parties' intent resides in the language they chose to employ in the agreement, and when that language is clear, a court may look no further to find the intent of the parties. Id. The words and phrases the parties use in an insurance contract must be given their natural and commonly accepted meaning. *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716. Courts then look to the plain and ordinary meaning of those words and phrases unless another meaning is clearly apparent from the contents of the policy. *Galatis* at ¶ 11. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id. When contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent that is not expressed in the clear language used by the parties. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 374 N.E.2d 146.

{¶ 19} But not all contracts contain clear, unambiguous language. When a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Galatis* at ¶ 12. Generally, the fact-finder must resolve the ambiguity. Id. at ¶ 13. But in the context of insurance contracts, any ambiguity is liberally construed in favor of the insured as long as the court's ultimate construction of the contract is reasonable. Id.; *Yeager v. Pacific Mut. Life Ins. Co.* (1956), 166 Ohio St. 71, 1 O.O.2d 204, 139 N.E.2d 48, paragraph one of the syllabus.

{¶ 20} When arguing that the policy language is ambiguous, Heritage points to Section (E)(8) of the Motor Truck Cargo Coverage portion of its policy with Great American. That portion of the policy provides:

{¶ 21} "If legal actions are taken to enforce a claim against you, we reserve the right, at our option, without expense to you, to conduct and control your defense.

This action will not increase our liability under the policy, nor increase the Limits of Insurance specified."

{¶ 22} Heritage contends that this provision limits Great American's ability to conduct and control Heritage's defense but does not limit its duty to defend. Heritage then argues that this court must find a duty to defend without more explicit language limiting Great American's duty to defend.

{¶ 23} Great American argues that a different provision of the policy provides that explicit language. Section (E)(4) of the Commercial Inland Marine Conditions portion of the policy provides:

{¶ 24} "We may elect to defend you against suits arising from claims of owners or property. We will do this at our expense."

{¶ 25} Great American contends that this language unambiguously stated that Great American has the right, but not the duty, to defend Heritage from suit. Great American is correct.

{¶ 26} The portion of the policy that Heritage relies on describes conditions that apply to the coverage Great American provided to Heritage under the policy. The conditions in that portion of the policy "apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions." Motor Truck Cargo Coverage Form, Section (E). Thus, both the contractual provision Heritage relies upon and the one relied on by Great American apply to Heritage's claim for benefits in this case.

{¶ 27} Heritage may be correct when it states that Section (E)(8) does not specifically say that Great American does not have a duty to defend Heritage from suit, but this fact is irrelevant because Section (E)(4) specifically states that Great American has the option, not the duty, to defend. Any ambiguity in one portion of the contract is eliminated when the contract is read as a whole. Heritage's arguments in this regard are meritless, and the trial court properly granted Great American summary judgment on this issue.

### Amount Paid to Heritage

{¶ 28} Heritage claims that the trial court erred when it concluded that Great American satisfied its duties under the contract, because there is a genuine issue of material fact regarding whether Great American fully reimbursed it for all its losses. Heritage argues that Great American reduced its payment to Heritage by the cost of storage and towing and that it did not pay an amount equal to the salvage value of the vehicles, all of which Heritage claims breached the policy. Finally, Heritage claims that Great American should be liable for some of these payments even if they are not provided for in the contract, since Great American violated its duty of good faith and fair dealing.

{¶ 29} In response, Great American argues that there are three reasons to support the trial court's judgment. First, it claims it made all of these payments about which Heritage now complains. Second, it contends that it was not required to make those payments. Finally, it argues that it cannot be held liable under a tort claim, since that claim was not pleaded or argued in the trial court.

### Costs of Storage

{¶ 30} Heritage claims that Great American improperly reduced the payment it made to Heritage by the storage fees Great American incurred while the claim was being processed. Great American claims that it did not reduce the payments to Heritage by this amount. It further contends that it was not obligated to pay those fees, so if it did make those payments, it properly reduced the payment to Heritage by that amount. Heritage responds by arguing that Great American breached its fiduciary duties, so it should be liable to pay these costs even if the contract doesn't require it to do so. Great American contends that the tort of breach of fiduciary duties was neither pleaded nor argued in the trial court and cannot now be raised on appeal.

{¶ 31} Although Great American argues that it did not reduce the payments to Heritage by the amount of storage fees, this argument is incorrect. Great American points to paragraph five of Patterson's March 4, 2004 affidavit in support of its description of the facts. In that paragraph, Patterson clearly states that the amount paid for storage was not deducted from the payments given to Heritage. But in a January 22, 2004 affidavit, Patterson gave a conflicting statement. In that affidavit, he stated:

{¶ 32} "Pursuant to the terms of the policy, Great American made payment directly to D.L. Heritage Transport, Inc., which represented the NADA retail value for two of the cars damaged beyond repair, and the cost of repair to the other three damaged vehicles, minus the amounts paid to A & M Towing for towing charges, and to Copart Salvage Auctions for storage fees that were accrued as these claims were being negotiated."

{¶ 33} Furthermore, in his deposition, Patterson testified that Great American had reduced its payment to Heritage by the amount of the storage fees. Thus, this court must, for the purposes of summary judgment, presume that Great American reduced the amount it paid to Heritage by the cost of storing the vehicles during the negotiations.

{¶ 34} Heritage next argues that Great American should not be allowed to reduce its payments to Heritage by the amount of those costs because Great American caused the delay in removing these vehicles from storage. In making this argument, Heritage does not point to any specific contractual provision providing that Great American would be liable for these costs in this situation.

Instead, it contends that Great American breached its duty of good faith and fair dealing.

{¶ 35} As Great American correctly argues, Heritage may not successfully rebut a motion for summary judgment by raising new theories of recovery in its reply opposing summary judgment. *Scassa v. Dye*, 7th Dist. No. 02 CA 0779, 2003-Ohio-3480, 2003 WL 21500292, ¶ 27. Holding otherwise would be unfair to the opposing party because it would not have fair notice of the claim and an opportunity to prepare a response thereto. Id. at ¶ 26. "Appellee's motion for summary judgment was based on the claims presented in Appellant's complaint, and Appellant was required to respond to the motion for summary judgment based on the claims already presented rather than by surprising Appellee and the court with new claims." Id. at ¶ 27.

{¶ 36} Although Stadium Lincoln–Mercury's complaint alleges that Heritage did not negotiate in good faith and that this bad faith caused Stadium Lincoln–Mercury to incur storage fees, Heritage's third-party complaint against Great American does not contain similar allegations. Thus, Heritage cannot use the unpleaded claim of breach of good faith and fair dealing to insulate itself from summary judgment on its breach of contract claim. Heritage's arguments in this regard are meritless, and the trial court properly granted summary judgment to Great American on this issue.

### Costs of Towing

{¶ 37} Heritage next claims that Great American improperly reduced the payment it made to Heritage by the payments it had made to the towing companies. Great American claims that it did not reduce the payments to Heritage by this amount. It further contends that it was not obligated to pay those fees, so if it did make those payments, then it properly reduced the payment to Heritage by that amount. Heritage responds by arguing that a specific provision of the insurance contract obligates Great American to pay these costs in addition to the damage to the vehicles.

{¶ 38} Great American's initial claim about the towing fees is as meritless as it was in regard to the storage fees. Patterson's first affidavit clearly states that Great American reduced its payment to Heritage by the amount paid for towing. His subsequent affidavit may indicate otherwise, but we must presume, for the purposes of summary judgment, that the facts in his first affidavit, those most favorable to the nonmovant, are correct. Thus, the issue becomes whether the contract provides that Great American is liable for the towing fees.

{¶ 39} Heritage argues that a specific provision extends coverage to these types of costs. In particular, Heritage points to Section (A)(4)(b) of the Motor

Truck Cargo Coverage Form. That section extends coverage beyond the damage to the property by providing:

{¶ 40} "We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period."

{¶ 41} According to Heritage, towing the vehicles from the site of the accident is an essential part of "removing debris." Great American contends that it is not. According to Great American, only actions such as clearing broken fragments from the highway constitute clearing debris. It further argues that the vehicles cannot be construed as "debris" since they have a documented value.

{¶ 42} The policy does not define the word "debris," so it must be given its plain and ordinary meaning. *Galatis* at ¶ 11. The dictionary defines "debris" as "the remains of something broken down or destroyed." Merriam–Webster's Collegiate Dictionary (10th Ed.1993) 297. A damaged car certainly seems to fit this definition of "debris" since it is the broken down remains of the original working automobile. And removing the car from the scene of the accident by towing it would be removing debris. Furthermore, any ambiguity in the meaning of this term must be resolved in Heritage's favor.

{¶ 43} Accordingly, Heritage is correct. Great American's coverage extended to towing these cars away from the scene. Thus, Great American should not have reduced its payment to Heritage by the amount it paid to have the vehicles towed from the accident. The trial court erred when it granted summary judgment to Great American on this issue.

## Salvage Value

{¶ 44} In its final argument, Heritage claims that Great American improperly deducted an amount equal to the salvage value of the totaled cars from its payment to Heritage. In response, Great American contends that it paid Heritage the proceeds of the salvage value of the totaled vehicles. It further contends that it was not obligated to pay the salvage value of the vehicles since the policy required it to pay only for direct physical damage to the vehicles.

{¶ 45} According to Patterson's January 2004 affidavit, Great American reduced its payment to Heritage only by the towing and storage expenses. And his March 2004 affidavit specifically stated that Great American paid Heritage the salvage proceeds for the totaled vehicles. But in his deposition testimony, Patterson testified that he "believed" Great American also "withheld the average salvage values of the vehicles that were totaled." Thus, his deposition testimony and his sworn affidavits appear to conflict.

{¶ 46} But this appearance is deceiving. In his deposition, Patterson testified that the salvage values were withheld from the first check given to Heritage in

payment for the accident. Great American, however, cut more than one check to meet its obligations under the policy. Patterson testified that Great American did not include the salvage value of the totaled vehicles in that check, because it had been unable to obtain title to those vehicles so it could determine their salvage value. Patterson did not testify that Great American never paid the salvage value of the vehicles to Heritage. Thus, his deposition testimony does not conflict with his sworn affidavit.

{¶ 47} Even when looking at the evidence in the light most favorable to Heritage, there is not a genuine issue of material fact regarding whether Great American paid the salvage value of the totaled vehicles to Heritage. Heritage's argument to the contrary is meritless, and the trial court properly granted summary judgment to Great American on this issue.

## Conclusion

{¶ 48} In conclusion, the trial court correctly granted summary judgment to Great American on every issue but one. There is a genuine issue of material fact regarding whether Great American improperly reduced its payment to Heritage by the towing expenses it paid to clean up after the accident. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.