[Cite as *Motorists Mut. Ins. Co. v. Cianfaglione*, 2014-Ohio-2885.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**


| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NOS.  2013-L-078** |
| | : | **and 2013-L-079** |
| - vs - | : | |
| ANDREW W. CIANFAGLIONE, et al., | : | |
| Defendants-Appellants. | : | |
| | : | |


Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CV 001028.

Judgment: Affirmed.


*Merle D. Evans, III,* Day Ketterer Ltd., Millennium Centre, #300, 200 Market Avenue North, Canton, OH 44701 (For Plaintiff-Appellee).

*Andrew S. Goldwasser* and *Amelia J. Leonard,* Ciano & Goldwasser, LLP, 1610 Midland Bldg., 101 Prospect Ave. W, Cleveland, OH 44115 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1}  Defendants-appellants, Andrew W. Cianfaglione and Andrew Cianfaglione, III, appeal the July 19, 2013 Opinion and Judgment Entry of the Lake County Court of Common Pleas, declaring that plaintiff-appellee, Motorists Mutual Insurance Company, "has no legal or contractual obligation to provide coverage to defendant Andrew W. Cianfaglione" or "to continue to defend [him] in Case No. 10 CV 001865 in the Lake County Court of Common Pleas."  The issues before this court are

whether the rule that insurance contracts should be strictly construed creates a presumption of coverage in favor of the insured and whether a judgment is against the weight of the evidence where there was contradictory testimony as to whether certain farming equipment was moved in furtherance of farming or construction activities. For the following reasons, we affirm the decision of the court below.

{¶2} On April 24, 2012, Motorists Mutual Insurance Company filed a Complaint for Declaratory Judgment, in the Lake County Court of Common Pleas, against Andrew W. Cianfaglione and Andrew Cianfaglione, III (father and son respectively). Motorists Mutual alleged that it had issued Cianfaglione a "Contractor's Policy" with commercial general liability coverage, and Cianfaglione had requested a defense and indemnification under the policy against negligence claims raised by Cianfaglione, III. Motorists Mutual sought a declaration that it was under no legal or contractual obligation to provide Cianfaglione either a defense or coverage with respect to Cianfaglione, III's claims.

{¶3} On May 15, 2012, Cianfaglione, III filed an Answer to Complaint for Declaratory Judgment, subsequently amended on May 25, 2012.

{¶4} On May 22, 2012, Cianfaglione filed an Answer.

{¶5} On June 3, 2013, the parties entered into the following Stipulations for Trial:

{¶6} 1. Andrew [Cianfaglione, III] was injured in an accident which occurred on July 5, 2008, on real property owned by his grandparents, Carolyn and Andrew Cianfaglione ("the

2

Grandparents"), located at or near 14354 Painesville Warren Road in Painesville, Lake County, Ohio.

{¶7} 2.     On June 22, 2010, Andrew filed a lawsuit against his grandparents and father, Bill [Cianfaglione], in the Lake County Court of Common Pleas, designated as Case No. 10CV001865.

* * *

{¶8} 5.     At the time of the accident on July 5, 2008, Bill was the sole member of a domestic limited liability company named A.W. Cianfaglione Builders, LLC ("the LLC").

* * *

{¶9} 8.     On July 5, 2008, the LLC was the named insured under Policy No. 33.271719-80E issued by Motorists Mutual Insurance Company ("the insurance policy").

{¶10} 9.     At the time of the accident on July 5, 2008, Bill was operating a 2006 John Deere skid steer. The John Deere skid steer is listed as contractor's equipment on the Commercial Inland Marine Coverage Form, which is a part of the insurance policy.

{¶11} 10.     As a member of the LLC, Bill qualifies as an insured, but only with respect to the conduct of the LLC's business.

{¶12} 11.     The insurance policy does not define the term "business." However, the insurance policy references on the declaration page two business classifications: (1) "CONTRS-SUBCONTR INCL

3

CONST RPR ERECTION 1 OR 2 FAM DWELL;" and (2) "SEPTIC TANK SYS INSTL, SERV, RPR."

{¶13} 12. Bill notified Motorists Mutual Insurance Company of [the lawsuit] and requested a defense and coverage for the claims asserted in [the lawsuit] under the insurance policy.

* * *

{¶14} 14. The insurance policy * * * was in full force and effect on July 5, 2008.

* * *

{¶15} 16. For purposes of this declaratory judgment action, the relevant definition of "Who is an Insured" for purposes of liability coverage under Section I, Coverage A, of the Commercial General Liability Form, CG 0001 (10-01), is set forth in Section II – Who is an Insured, of the Commercial General Liability Coverage Form, CG 0001 (10-01), which provides as follows:

**SECTION II – WHO IS AN INSURED**

{¶16} 1. If you are designated in the Declarations as:

* **

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as managers.

**{¶17}** 17. The parties agree that the issue for the Court at trial is whether Bill was operating the skid steer in connection with the conduct of the LLC's business at the time of the accident.

**{¶18}** On June 3, 2013, a bench trial was held. The sole witness to testify was Andrew W. Cianfaglione (the father). He testified that on July 5, 2008, as well as on the preceding day, he had been harvesting hay on his parents' farm. He had been farming on the property for about ten to fifteen years, since his father "was getting older and he couldn't do it anymore." The farming was not profitable, but it qualified his parents for a tax exemption "so they don't have to pay [the] full amount of taxes due on the property."

**{¶19}** Cianfaglione had been self-employed as a general contractor since 1986. He stored equipment used in his business on the farm, including a 1990 Mack dump truck and a 2006 John Deere skid steer. The skid steer was used in the construction business as well as around the farm, for moving equipment and cleaning the barns. The dump truck was usually stored in a blue pole barn, in front of a hay elevator. The hay elevator had not yet been used in 2008. Cianfaglione could not recall the last time he had used the dump truck before the incident in question.

**{¶20}** On July 5, 2008, Cianfaglione and his son had spent the morning fluffing the hay in preparation for raking and baling. After midday, Cianfaglione moved the dump truck out of the pole barn, "so we could get the [hay] elevator out of there." He then used the skid steer to take the elevator out of the barn. As the elevator was being removed from the barn, it collapsed on his son.

**{¶21}** In a deposition taken on January 21, 2013, Cianfaglione testified that, on July 5, 2008, the dump truck was parked by the hay barn, and he wanted it moved to

the pole barn to make room around the hay barn for baling. In the deposition, Cianfaglione stated that he moved the dump truck "just to get it out of the way," and "put [the hay elevator] out by the barn where the Mack and skid steer are parked."

{¶22} At trial, Cianfaglione testified that the hay would have to cure for a few days before it could be baled and stored in the hay barn. In his deposition, he testified that he intended to use the elevator that afternoon (July 5) to move bales into the barn.

{¶23} In the lawsuit filed against him by his son, the Complaint alleged that, on July 5, 2008, Cianfaglione and his son "were assisting Defendants Andrew and Carolyn Cianfaglione with the farming operations." This allegation was "admitted" in Cianfaglione's Answer to the Complaint. At trial, Cianfaglione testified that his attorney had prepared the responses, and that he was unaware of the admission.

{¶24} On cross-examination, Cianfaglione asserted that he was moving the hay elevator in furtherance of his construction business: "I was moving [the elevator] out of the aisleway [in the pole barn] to make it easier to get in and out of there." He denied that he was going to use the elevator for farming that day, and asserted that he was using the skid steer to "mov[e] the hay elevator out of the way."

{¶25} On July 19, 2013, the trial court issued an Opinion and Journal Entry, finding that Cianfaglione "was not operating the skid steer in connection with the conduct of the business of the insured Andrew W. Cianfaglione Builders, LLC at the time of the accident," "farming does not fall within the two business classifications listed on the declarations page of the insurance policy," "Andrew W. Cianfaglione does not qualify as an 'insured' for purposes of liability coverage," and, therefore, "Motorist Mutual Insurance Company does not have any legal or contractual obligation to

6

continue to defend Andrew W. Cianfaglione in Case No. 10 CV 001865 in the Lake County Court of Common Pleas."

{¶26} On August 19, 2013, Cianfaglione, III, (the son) filed a Notice of Appeal, assigned Court of Appeals No. 2013-L-078.

{¶27} On August 19, 2013, Cianfaglione (the father) filed a Notice of Appeal, assigned Court of Appeals No. 2013-L-079. Cianfaglione has not filed a brief or otherwise prosecuted this appeal.

{¶28} On December 10, 2013, this court issued a Magistrate's Order, consolidating Case Nos. 2013-L-078 and 2013-L-079 "for purposes of briefing, oral argument, and disposition."

{¶29} On appeal, Cianfaglione, III, raised the following assignment of error:

{¶30} "[1.] The trial court committed reversible error when it concluded that Mr. Cianfaglione was not engaged in any aspect of the business of A.W. Cianfaglione Builders, LLC at the time of the incident."

{¶31} Questions of law within the context of a declaratory judgment action are reviewed on a de novo basis. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. Where the issues involved are factual, the lower court's judgment will be affirmed if supported by competent and credible evidence. *Shear v. W. Am. Ins. Co.*, 11 Ohio St.3d 162, 164, 464 N.E.2d 545 (1984). Thus, in a declaratory judgment action, "a reviewing court cannot and should not disturb the findings of a trial judge respecting credibility." *Id.* at 165; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984) ("[w]hile * * * in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being

7

against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct").

{¶32} Cianfaglione, III's, first argument is that the trial court erred by failing to employ a presumption in favor of insurance coverage. Cianfaglione, III's, reliance on the alleged presumption that his father was entitled to insurance coverage is misplaced.

{¶33} In Ohio insurance law, there is a rule of construction, not an evidentiary presumption, that "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus. This rule of construction has no application in the present case. The contract language at issue is not ambiguous: "Your members are also insureds, but only with respect to the conduct of your business." What "conduct of your business" means is not defined in the policy, but must be given its "natural and commonly accepted meaning." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982). In the present case, neither party has urged that the words are ambiguous. Rather, the parties stipulated to their meaning by defining the determinative issue with respect to coverage as "whether Bill was operating the skid steer in connection with the conduct of the LLC's business at the time of the accident." This is not a legal issue regarding the interpretation of contract language, but a factual issue.

{¶34} Contrary to Cianfaglione, III's, argument, the insured is not entitled to any presumption as to what the evidence shows or how it is to be interpreted. Cianfaglione,

8

III, relies on *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6, 87 N.E.2d 156 (1949), for the proposition that a presumption "is equivalent to a substantive rule of law to the effect that a particular fact must be assumed when another particular fact or group of facts exist, or there is substantial evidence of such particular facts, unless and until the truth of the assumed fact is disproved." *Id.* at 15. Reliance on *Shepherd* is inapposite, inasmuch as that case describes the evidentiary effect of a legitimate legal presumption, rather than a mere rule of construction such as the present case presents.[1]

{¶35} Cianfaglione, III, erroneously characterizes another rule of construction as a legal presumption, the rule that "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). This rule does not create a presumption that all insureds under a contract of insurance are entitled to coverage unless proven otherwise. *Compare Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34, 418 N.E.2d 1381 (1981) ("[i]t is undisputed that one seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy"). Even if such a presumption existed, it would not apply in the present case since the issue is not whether coverage is excluded, but whether coverage exists in the first place, i.e., whether Cianfaglione is an insured (given that the only named insured under the policy is A.W. Cianfaglione Builders, LLC and members are not automatically covered).

---

1. At issue in the *Shepherd* case was "[o]ne of the well recognized presumptions of the law * * * that, where it is shown that death resulted from bodily injury caused by violent and external means without a showing as to how the injury was in fact sustained, there is a presumption that death did not result from suicide, self-infliction of injury, criminal assault of another, or voluntary employment of the means causing death." *Id.* at 15.

9

{¶36} Cianfaglione, III's, next argument is that Motorists Mutual failed to present any evidence to rebut "the presumption * * * that Mr. Cianfaglione was acting on behalf of the LLC at the time of the incident." Appellant's brief at 8. For the reasons stated above, the trial court was under no obligation to "presum[e] that Mr. Cianfaglione was moving the equipment in furtherance of the LLC's business." Assuming, arguendo, such a presumption existed, there was competent and credible evidence before the court to support its conclusion that Cianfaglione was not operating the skid steer in furtherance of Cianfaglione Builders' business.

{¶37} Finally, Cianfaglione, III, asserts that this conclusion is against the weight of the evidence. He relies on his father's testimony to the effect that the hay elevator was being moved out of the pole barn "to make it easier to get in and out of there."[2]

{¶38} We agree with the trial court's conclusion that Cianfaglione's testimony on this point was "contradictory" and, accepting either the trial or deposition testimony, "the father was moving the Mack truck and skid steer to further his farming operations and not to store these two vehicles."

{¶39} Focusing on Cianfaglione's trial testimony, he stated that, on the morning of July 5, which he spent engaged in farming activities, the dump truck was stored in the pole barn in front of the hay elevator. He had not moved or used either the dump truck or the elevator that morning and could not recall the last time he had used the truck for his construction business. After fluffing the hay, he testified he moved the dump truck "to pull it out of the way so we could get the elevator out of there [the pole barn][;] * * * I

_____

2. The leading character of trial counsel's questioning at this point in Cianfaglione's testimony is noteworthy: "You needed to make room * * * so that you can get to your Mack truck, is that right? * * * Did you * * * need to move your dad's farm equipment in order to make room for your company's equipment? * * * [W]ere you moving your dad's hay elevator to make room for the Mack truck in furtherance of your business?"

needed to clear the aisle way so we could pull straight back in and out of the barn, have easy access." The elevator would be used to move bales to the loft of the hay barn, an activity that had to be performed a couple of times each year.

{¶40} According to this testimony, there was no need to store the dump truck in the pole barn because it was already stored in the pole barn on July 5. The truck was being moved to provide easier access to the hay elevator.

{¶41} Focusing on Cianfaglione's deposition testimony, he stated that, on July 5, the dump truck was not stored in the pole barn, but outside by the hay barn. Since he was engaged in farming activities that day, he wanted to move the truck "just to get it out of the way." In order to store the truck in the pole barn, it was necessary to move the hay elevator:

{¶42} I was going to put the Mack and the skid steer back in the pole barn * * * [but the elevator was] kind of parked right in the center of the aisleway. * * * I use the skid steer on the farm also, * * * to clean barns out, to lift pallets of fertilizer, to move the equipment around because it's just that much faster and easier to maneuver. But to get the [farm] equipment up by the barn where we need room to do the hay, that's where I park the [construction] equipment. So to get it out of the way we put it back in the [pole] barn.

{¶43} According to this testimony, the dump truck was being stored in the pole barn for convenience, not in furtherance of the construction business. More significantly, the skid steer was being used at the moment in furtherance of farming activities, to move the hay elevator where it would be needed by the hay barn.

11

**{¶44}** The sole assignment of error is without merit.

**{¶45}** For the foregoing reasons, the Judgment of the Lake County Court of Common Pleas, in favor of Motorists Mutual, is affirmed. Costs to be taxed against appellants.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.